**R. G. BARRY CORPORATION, Plaintiff, Appellant,**

v.

**A. SANDLER CO., Inc., Defendant, Appellee.**

**No. 7187.**

United States Court of Appeals
First Circuit.

Jan. 21, 1969.

Walter D. Ames, Washington, D. C., with whom Felix M. DeRosa, Washington, D. C., and Rowland V. Patrick and Charles C. Winchester, Boston, Mass., were on brief, for appellant.

James E. Mrose, Boston, Mass., for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This is an appeal from an action of trademark infringement and unfair competition. Appellant, R. G. Barry Corporation, plaintiff below, is the owner of two United States trademarks, "Angel Treads" (used in connection with scuffs or slippers for women and men) and "Angelite" (used for soles for scuffs or slippers for women and men). Plaintiff began first using the "Angel Treads" mark in 1948 and first began using the "Angelite" mark in 1954. Plaintiff has engaged in extensive manufacturing and advertising with regard to products sold under these marks.

Appellee, Sandler Company, first began using the term "Angel Touch" in 1961 (in connection with pumps and step-ins for women and misses). Although "Angel Touch" has never been used in connection with slippers or scuffs by appellee, the record indicates that Sandler's goods are sometimes sold in the same stores as Barry's—and in the same departments.

The parties stipulated the facts in the district court action; those stipulations, along with the exhibits and the testimony of one defense witness constituted the sole evidence before the district court. The trial court, in a Memorandum consisting of twelve separately numbered findings, dismissed Barry's complaint, stating that Sandler had not infringed Barry's marks and was not in unfair competition with appellant.

Aside from appellant's objections to certain factual findings, which we note briefly in the margin,[1] its major contentions are that the district court erred in underestimating the similarity between the impressions conveyed by Barry's trademarks and Sandler's term "Angel Touch", in finding that "Angel Treads" is not "arbitrary, unique or fanciful" and in making the following additional findings to support its ultimate conclusion that there was no likelihood of confusion on the part of ordinarily prudent customers: (1) that "Angel Treads" is a weak mark; (2) that it has not acquired a secondary

---

1. Finding No. 1 stated that Barry's registrations "specifically limit the marks to 'scuffs or slippers'". This is attacked as evidencing a belief by the court that a trademark protects no more than the precise goods specified. We think it clear that the court's language here and else-

where is consistent with the rebuttable presumption limitation provisions of 15 U.S.C. § 1115.

Findings No. 3 and 7 are attacked as having no basis in the record. Our review of the record reveals a sufficient basis for both.

meaning; (3) that Barry's slippers and scuffs are significantly unlike Sandler's shoes; (4) that the two product lines have a marked difference in price; (5) that the two lines are merchandised differently; and (6) that the two lines are promoted with the use of the two firms' significantly different housemarks.

We hold that the district court applied the proper standards and that its findings are consonant with both the law and the evidence.

 It is of course apparent that, standing alone, the two terms, "Angel Tread" and "Angel Touch" are similar in appearance and sound, and suggest softness and lightness. Restatement of Torts, § 729(a). Were "Angel Tread" a strong mark, i. e., one so arbitrary, fanciful, and unique that its use through promotion had come to symbolize the source of origin rather than a not very extraordinary description of the qualities of the product, the court might not have been justified in looking further. But it was justified in finding this a weak mark, taking into consideration its suggestiveness, Barry's own insistence before the Patent Office that its two-word combination significantly set it apart from a prior mark for the single word "Angel", the plethora of other registrations of composite "Angel" trademarks and the use of a number of such marks in the retail clothing business. That Barry's sales and advertising expenditures were substantial did not compel a finding by the court that the mark was strong.[2]

The court was therefore justified in going beyond a side-by-side comparison of names and considering other matters likely to influence prospective purchasers. Restatement of Torts, § 729(c).

It had no evidence before it of any actual confusion on the part of customers, despite widespread use of the term "Angel Touch" by Sandler throughout the United States for several years.[3] It made careful findings, supported by the evidence, that not only had Sandler not used its term on scuffs or slippers, but that its "Angel Touch" shoes were much more expensive, and, in contrast to Barry's "impulse-buying items" (which had sometimes been advertised and sold as "notions") had to be specially fitted.

 A factor which appears to us to have exceptional significance is that the court found that Sandler often and Barry "in almost every instance" conjoined their respective "housemark"— "Sandler", "Miss Sandler", "Sandler of Boston", or a fanciful design of a cobbler, or, "Barry"—with the term "Angel Touch" or the trademark "Angel Tread." In short, the housemark rather than the trademark or product seems to have been relied upon to reveal the source of origin. Cf. John Morrell and Co. v. Reliable Packing Co., 295 F.2d 314, 317 (7th Cir. 1961). Our own viewing of the exhibits revealed not only the general practice of combining product name and housemark, but the consistent use of a simulated calligraphy by Barry and standard type by Sandler.

 What we have said with reference to appellant's mark "Angel Tread" applies a fortiori to its other mark in issue, "Angelite." And in affirming the court's findings and conclusions on the trademark infringement count, we have similarly disposed of the unfair competition count, for there has been no evidence of any other factors than those we have discussed which would have bearing on such a claim.

Affirmed.

2. To refer to some of our own prior decisions, we observe that the two terms we mainly deal with here are comparable in strength—or weakness—to the terms, "Jewelite" and "Gemlite", which we considered in Pro-Phy-Lac-Tic Brush Co. v. Jordan Marsh Co., 165 F.2d 549 (1st Cir. 1948) and are weaker than "Esquire" to

which we gave some protection in Esquire, Inc. v. Esquire Slipper Manufacturing Co., 243 F.2d 540 (1st Cir. 1957).

3. The only evidence of confusion was the deposition of a department store copywriter who once wrote an advertisement for Sandler's product, erroneously calling it "Angel Tred Kiltie".