**PIGNONS S. A. de MECANIQUE de PRECISION and T.A.G. Photographic, Inc., Plaintiffs,**

v.

**POLAROID CORPORATION and Sears, Roebuck and Co., Defendants.**

**Civ. A. No. 77–392–MA.**

United States District Court, D. Massachusetts.

Oct. 7, 1980.

As Amended Nov. 24, 1980.

Richard J. Birch, Thompson, Birch, Gauthier & Samuels, Boston, Mass., for plaintiffs.

Laurence S. Fordham, William J. Cheeseman, Foley, Hoag & Elliot, Boston, Mass., for defendants; William K. Kerr, Herbert F. Schwartz, Patricia A. Martone, Fish & Neave, New York City, of counsel.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This is an action for injunctive relief and damages based on alleged trademark infringement, unfair competition and trademark dilution. The plaintiffs have sold cameras in the United States under the registered trademark "ALPA." This complaint is based on the defendants' use of the term "Alpha" in connection with the sale of the Polaroid model SX–70 instant camera. The Complaint and Supplemental Complaint are lengthy, replete with a mass of details, exhibits and recitations of an evidentiary nature.[1] Counts One and Five allege federal trademark infringement in violation of section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a). Counts Two and Seven allege federal unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Counts Three and Eight allege state trademark infringement, in violation of M.G.L.A. c. 110B, § 11. Finally, Counts Four and Six allege violations of the Massachusetts "anti–dilution" statute, M.G.L.A. c. 110B, § 12.[2]

1. Plaintiffs' original Complaint contained four counts. On August 29, 1980, this Court allowed plaintiffs' motion to file a Supplemental Complaint containing four additional counts, updating the original claim and adding a second federal trademark infringement count.

2. In pertinent part those statutes provide:
   § 1114(1). Any person who shall, without the consent of the registrant—
   (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;
   (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.
   shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) of this section, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.
   § 1125(a). Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.
   c. 110B, § 11. Subject to the provisions of section fourteen, any person who shall:
   (a) use, without consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a mark registered under this chapter in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services; or
   (b) reproduce, counterfeit, copy or colorably imitate any such mark and apply such reproduction, counterfeit, copy or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used upon or in conjunction with the sale or other distribution in the commonwealth of such goods or services, shall be liable to a civil action by the owner of such registered mark for any or all of the remedies provided in section thirteen, except that under this section the registrant shall not be entitled to recover profits or damages

Jurisdiction over the federal claims is based on 15 U.S.C. § 1121 and 28 U.S.C. §§ 1338(a) and (b). Jurisdiction over the state claims is based on diversity, pursuant to 28 U.S.C. § 1332(a). Venue in the District of Massachusetts is proper, pursuant to 28 U.S.C. §§ 1391(b) and (c).

Plaintiff Pignons S.A. de Mecanique de Precision (Pignons) is a Swiss corporation with considerable expertise in the manufacture and assembly of high–tolerance, precision mechanical components for the Swiss watch industry. Plaintiff T.A.G. Photographic, Inc. (T.A.G.), Pignons' exclusive distributor in the United States, is a New York Corporation having a principal place of business in Westbury, New York.

Defendant Polaroid Corporation (Polaroid), known internationally as an innovator in the field of instant photography, is a Delaware corporation, with a principal place of business in Cambridge, Massachusetts. Defendant Sears, Roebuck and Co., the largest mass–merchandise retailer in the United States, is a New York corporation with a principal place of business in Natick, Massachusetts.

In 1948, Pignons' application for federal trademark registration of the mark "ALPA" in connection with the manufacture and sale of photographic apparatus and accessories was approved. The following year, Pignons introduced a 35 mm single lens reflex camera in the United States market, and a corresponding line of lenses and photographic equipment, all bearing the trade name ALPA.[3]

Pignons alleges that sales of ALPA cameras and equipment in the United States have been continuous since 1949. The record indicates that sales fluctuated widely during the period 1965 to 1976, reached a peak of $721,221.69[4] in 1978, and diminished thereafter. Since June, 1978, Pignons has not shipped any ALPA cameras to the United States, although documents recently submitted by plaintiffs' counsel indicate Pignons intends to resume marketing activity here in the near future.

"T.A.G." is an abbreviation for The Alpa Group. It has been Pignons' exclusive distributor of ALPA cameras and accessories in the United States since 1976. From 1953 to 1976, ALPA cameras were distributed in the United States by Karl Heitz, Inc. At all times relevant to the instant controversy, ALPA cameras and equipment have been sold to the public exclusively through select camera specialty stores. On November 21, 1978, T.A.G. filed a Chapter XI petition in the District Court for the Eastern District of New York, and was adjudicated a bankrupt on June 27, 1979. Plaintiffs make no claim that defendants' marketing activities were a proximate cause of the bankruptcy.[5]

On or about September, 1976, Polaroid began advertising and selling in the United

---

unless the acts have been committed with knowledge that such mark is intended to be used to cause confusion or mistake or to deceive.

c. 110B, § 12. Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

3. As of the date this action was instituted, Pignons had no trademark expressly covering cameras. Thus, plaintiffs' original Complaint purports to rely on the 1948 trademark registration as the basis for relief. On July 11, 1978, during the pendency of the instant litigation, U.S. Reg. No. 1,095,783 issued, extending cov-

erage of the mark ALPA to cameras. (Supplemental Complaint, ¶ 62 and Ex. 10).

4. Figures are in United States Dollars, converted from Swiss Francs based on the conversion rate for June, 1978, as reported in the Federal Reserve Bulletin. (Schwartz Aff., Ex. 13). Defendants allege that a significant portion of Pignons' reported sales increases during the period 1977–78 was due to an increase in the value of the Franc against the Dollar. We express no view as to the accuracy or significance, if any, of this contention.

5. In an affidavit filed in the bankruptcy proceeding, T.A.G. president Stuart Held attributed the company's problems to "general economic decline," "late factory deliveries" and other factors. No mention was made of the defendants' sales or marketing activities. (Schwartz Aff., Ex. 10; Stipulations, ¶ 9).

States a new model of its popular SX–70 instant camera, known as the "Polaroid SX–70 Land Alpha." Polaroid claims it chose the word Alpha to designate the new model because of its relationship to certain electrical circuitry developed for use in the SX–70 camera. The features of the SX–70 Alpha are described more fully *infra.*

Polaroid's SX–70 Alpha camera was advertised and sold nationally through department stores, camera shops, drug and discount stores. Defendant Sears advertised and sold a special version of the camera designated "Polaroid SX–70 Land Camera Alpha Sears."[6] Upon information and belief, a Polaroid representative has stated that the defendant no longer manufactures Alpha cameras for sale in the United States, and has only about 12,000 such cameras in its inventory. The defendants have offered no evidence to dispute this claim.

The gravamen of plaintiffs' complaint is that, given the nature of Pignons' and Polaroid's products, i. e., cameras, defendants' use of the term Alpha is likely to cause and has confused among consumers between the companies and/or their products.[7] Pignons also claims defendants' use of the term Alpha has diluted the distinctive quality of its ALPA mark, in violation of state law. As a result of defendants' activities, plaintiffs claim they have suffered, and continue to suffer, substantial injury to their business reputation and good will.

After more than three years of pleading and discovery, the defendants now move for summary judgment, claiming, *inter alia* : plaintiffs have failed to raise a genuine issue as to the likelihood that customers will be confused by Polaroid's use of the term Alpha as a model designation; plaintiffs have no enforceable right to use the term ALPA in the United States; and plaintiffs have no enforceable right to use the term

Alpha in the United States. The plaintiffs oppose this motion on the grounds that (1) if material facts are not in dispute, then they are entitled to summary judgment and (2) if material facts are in dispute, then the defendants are not entitled to summary judgment. Argument was heard by this Court on September 6, 1980. We address first the appropriateness of resolving this dispute by way of summary judgment.

## I. APPROPRIATENESS OF SUMMARY JUDGMENT

Rule 56(c) of the Fed.R.Civ.P. provides, in pertinent part, that summary judgment shall be granted:

[I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

This Circuit has indicated that unless there is a genuine dispute of material fact manifested by "substantial" evidence, summary judgment should be granted. *Hahn v. Sargent,* 523 F.2d 461 (1st Cir. 1975), *cert. denied* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976).

Most situations in which trademark rights are asserted present a complicated array of factual issues requiring substantial development. As a result, the federal courts have developed an informal but well–recognized policy against summary disposition of complex infringement and unfair competition cases. *See Albert Dickinson Co. v. Mellos Peanut Co.,* 179 F.2d 265, 270 (7th Cir. 1950); *National Color Laboratories, Inc. v. Phillip Foto Co.,* 273 F.Supp. 1002, 1004 (S.D.N.Y.1967).

On the other hand, the Court may determine that the facts have been fully

---

**6.** Another version of the Polaroid SX–70 is sold in K–Mart Stores, under the name "Polaroid SX–70 Land Camera Alpha BC K–Mart." K–Mart, however, was not named as a defendant in this action.

**7.** While we will use Alpha to describe the camera, we believe it important to point out that

the name Alpha has never been used alone on the cameras themselves or in any advertisement presented to us. Various models are Alpha 1, Alpha 1SE, Alpha 1 Model 2, Alpha Model 2, Alpha BC, Alpha Sears Special, Alpha Executive, and Alpha Special Edition.

developed through pleadings, affidavits, documents, and exhibits and that the legal issues are squarely presented. Where it appears that a trial is not likely to develop additional evidence helpful to either side, summary judgment may well be an appropriate method of disposing of a case, even as to issues of distinctiveness and likelihood of confusion. *United States Jaycees v. San Francisco Junior Chamber of Commerce*, 354 F.Supp. 61 (E.D.Cal.1973); *James Burrough Ltd. v. Beef/Eater Restaurants, Inc.*, 272 F.Supp. 489 (N.D.Ga.1967), *aff'd* 398 F.2d 637 (5th Cir. 1968).

In this case, the legal issues are apparent, and there is an extensive record consisting of pleadings, depositions, affidavits, exhibits, answers to interrogatories, stipulations and memoranda. We are unaware of any additional factual development that remains to be undertaken, which might alter the present circumstances. Therefore, we must decide whether, under any reasonable construction of the facts and under any acceptable theory of law, the plaintiffs could possibly prevail. *United States Jaycees, supra.* All doubts must be resolved in favor of the party opposing the motion, *Hahn v. Sargent, supra*; and the record must be viewed in the light most favorable to the plaintiff. *See, e. g., Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). We turn then to the heart of the instant case—the issue of likely confusion.

## II. LIKELIHOOD OF CONFUSION

■ In order to sustain a claim of trademark infringement under federal as well as Massachusetts law, the plaintiff is required to demonstrate that the defendant's use of the same or similar mark is likely to cause confusion among potential consumers as to the source of its product. 15 U.S.C. § 1114(1)(a); M.G.L.A. c. 110B, § 11; *Fisher Stoves, Inc. v. All–Nighter Stove Works, Inc.*, 626 F.2d 193, 194 (1st Cir. 1980); *Coca–Cola Co. v. Snow Crest Beverages*, 162 F.2d 280, 283 (1st Cir.), *cert. denied* 332 U.S. 809, 68 S.Ct. 110, 92 L.Ed. 386 (1947). Likelihood of confusion is also

an essential element of an unfair competition claim based on section 43(a) of the Lanham Act, 15 U.S.C. § 1125. *Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.*, 567 F.2d 154, 160 (1st Cir. 1977).

Accordingly, unless a material dispute exists as to whether consumers are likely to be confused by defendants' use of the term Alpha, Polaroid and Sears are entitled to summary judgment on these claims of trademark infringement and unfair competition as a matter of law.

■ In assessing the likelihood of confusion, the test is whether "an appreciable number" of ordinarily prudent purchasers is likely to be misled or confused as to the source of the goods in question. *McGregor–Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1130 (2d Cir. 1979); *Miller Brewing Co. v. Carling O'Keefe Breweries of Canada, Ltd.*, 453 F.Supp. 429, 444 (W.D.N.Y. 1978). As the First Circuit recently indicated:

> A mere possibility [of confusion] is not enough (citation omitted); there must be a substantial likelihood that the public will be confused as to the source of the goods.

*Fisher Stoves, supra*, 626 F.2d at 194 (citing *Valmor Products Co. v. Standard Products Corp.*, 464 F.2d 200, 202 (1st Cir. 1972)).

■ The federal courts have identified a number of factors which are helpful in determining whether the defendant's use of a particular mark is likely to be confusing. Among these are: the degree of similarity between plaintiff's and defendant's mark in appearance *and suggestion*; the similarity of the products in connection with which the marks are used; the area and *manner* of production, marketing, distribution, and concurrent use; the strength of complainant's mark; the degree of care likely to be exercised by customers in purchasing the goods in question; evidence of instances of actual customer confusion; and whether there is evidence of defendant's intent to "palm off" his goods as those of the plaintiff. *See Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252 (5th Cir. 1980); *B & L Sales Associates v. H. Daroff & Sons, Inc.*,

421 F.2d 352, 354 (2d Cir.), *cert. denied* 398 U.S. 952, 90 S.Ct. 1873, 26 L.Ed.2d 292 (1970); *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961); Restatement of Torts, § 729 (1938). We shall proceed by examining the facts in the record bearing on each of the above factors in the instant case, in order to determine whether, viewing the record in the light most favorable to the plaintiffs, they could possibly prevail on the issue of confusion.

### A. Product Similarity

▇▇ Plaintiffs' mark ALPA is used exclusively on expensive, hand–crafted 35 millimeter cameras and equipment, ranging in price from a low of $899 (in 1976) to as much as $1395 for a camera equipped with a "50 mm, f/1.9 Macro–Switar Lens." A review of Pignons model ALPA 11 Si in one trade magazine described the camera as "expensive," "unconventional" and "carefully made in a small factory in limited quantities." Plaintiffs' advertisements emphasize such features as a special light metering system, film advance, and mechanical precision. Plaintiff boldly asserts its ALPA products are among the best crafted lines of photographic equipment and accessories in the world.

By contrast, Polaroid's SX–70 Alpha cameras are significantly less expensive, ranging in price from $139.99 for the Sears' model, to a high of $210.[8] Plaintiffs' own Complaint lists no less than 20 important feature distinctions between its ALPA cameras and Polaroid's SX–70 Alphas. Of critical importance, in our view, is the fact that the SX–70's are *instant* cameras, which produce a fully developed photograph within moments after a picture is taken. In short, the SX–70 is a compact, lightweight, mass–produced, moderately priced instant camera, while the plaintiffs' goods are top–of–the–line, finely crafted, expensive precision instruments.

---

**8.** Price differential itself has been acknowledged by the First Circuit as a factor to consider in determining the likelihood of confusion.

Apart from the fact that both plaintiffs and defendants manufacture and sell cameras, our review of the record reveals substantial differences in the construction, features, and appearance of the goods, all of which serve to vitiate any confusion one might otherwise expect when two manufacturers market products bearing the same or similar model designations. *See Amstar Corp., supra,* 615 F.2d at 261 (plaintiff's sugar, salt, mustard, ketchup and other condiments not so closely related to defendant's pizza as to create likelihood of confusion from both parties use of mark "Domino"); *B & L Associates, supra,* 421 F.2d at 354 (appeals court noted differences between men's suits and leisure wear in affirming lower court's finding of absence of likely confusion on motion for summary judgment); *Westward Coach Manufacturing Co. v. Ford Motor Co.,* 388 F.2d 627, 635 (7th Cir.), *cert. denied* 392 U.S. 927, 88 S.Ct. 2286, 20 L.Ed.2d 1386 (1968) (campers and trailers not so similar to automobiles that both plaintiff's and defendant's use of the mark "Mustang" was likely to cause confusion).

### B. Production, Advertising and Distribution

ALPA cameras have been marketed in the United States through a series of exclusive distributorships which, in turn, sell to the public exclusively through a select group of about 125 camera specialty stores. It is undisputed that at all times relevant to the instant controversy, ALPA cameras have been produced and sold in limited quantities in the United States. Indeed, during the period from July, 1976 through June, 1979, a total of only 2417 ALPA cameras were shipped to the United States. T.A.G.'s advertising of ALPA products has been correspondingly limited and, for the most part, has been restricted to periodic spots in photography magazines.

By contrast, Polaroid's SX–70 Alpha camera is mass–produced and mass–marketed.

---

*R. G. Barry Corporation v. A. Sandler Co.,* 406 F.2d 114, 116 (1st Cir. 1969).

It can be purchased in any one of thousands of camera shops, discount and drug stores, and other retail outlets. Polaroid's advertising campaign for the SX–70 has been equally extensive, including nationwide television and magazine ads. During the fall of 1976, for example, advertisements for the SX–70 appeared in Time, Newsweek, Atlantic, Esquire, Money, U. S. News and World Report, and other popular magazines.

Plaintiffs' Memorandum in opposition to the instant motion acknowledges the vast differences in production, distribution and marketing philosophy embodied in the respective products:

> Comparing Pignons' ALPA camera production and sales to Polaroid's Alpha production and sales is like comparing Rolls–Royce's auto production to General Motors.

(Plaintiffs' Mem., at 4). Similarly, Plaintiffs' own advertisements belie their assertion that they seek to attract the same customers as Polaroid:

> What the ALPA isn't
>
> The ALPA is not mass–produced and therefore not cheap. It's not the camera for you if you only take a film from time to time. And it's hardly a wise choice for the beginner or for someone who doesn't attach much importance to photography.

(Complaint, Ex. 4). Compare a typical Polaroid brochure, which seeks to appeal to the average consumer:

> In short, only Polaroid's cameras offer a variety of features that can made instant picture taking easy and fun for just about anybody. And any pocketbook.

(Defendants' Mem., App. A).

In short, plaintiffs' assertion that Pignons' ALPA products and Polaroid's SX–70 Alpha camera can be purchased in some of the same stores and have occasionally been advertised in the same magazines, is insubstantial in light of the vast undisputed differences in production, distribution, customer appeal, and marketing philosophy, each of which tends to diminish the likelihood of confusion in the instant case. *See, e. g., Amstar Corp.*, 615 F.2d at 262 (fast food outlets and grocery stores considered different channels of distribution, notwithstanding fact that plaintiff's products could be found in defendant's stores). *R. G. Barry Corp. v. A. Sandler Co.*, 406 F.2d 114, 116 (1st Cir. 1969) (appeals court affirmed, *inter alia*, finding that slippers and scuffs were merchandised differently from women's shoes, reducing the likelihood of confusion); *Alpha Industries v. Alpha Steel, Etc.*, 616 F.d 440, 445 (9th Cir. 1980) (finding that tube cutting machinery was not in the same "channel of commerce" as steel tubing contributed to finding of no likelihood of confusion); *Westward Coach, supra*, 388 F.2d at 635 (slight overlap of marketing channels does not preclude summary judgment in view of other important differences reducing the likelihood of consumer confusion). Cf. *Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44, 47–48 (2d Cir. 1978), *cert. denied* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).

## C. *Degree of Care by Consumers*

Although likelihood of confusion, *vel non*, in each case must be assessed from the point of view of the ordinary consumer, *Sun Maid Raisin Growers v. Sunaid Food Products, Inc.*, 356 F.2d 467, 469 (5th Cir. 1966), courts have recognized that the likelihood of confusion diminishes where, for one reason or another, the ordinary consumer of a particular product can be expected to exercise a greater degree of care in purchasing that product. *See, e. g., Fisher Stoves, supra*, 626 F.2d at 194. This is particularly true in the case of what the First Circuit has described as a "single purchase" item. *Id.* As the Court noted:

> [E]very product has its own separate threshold for confusion of origin. The greater the value of an article the more careful the typical consumer can be expected to be; the average purchaser of an automobile will no doubt devote more attention to examining different products and determining their manufacturer or source than will the average purchaser of a ball of twine.

*Id.* (citing *McGregor Doniger, supra,* 599 F.2d at 1137 and *Taylor Wine Co. v. Bully Hill Vineyards, Inc.,* 569 F.2d 731, 733 (2d Cir. 1978)).

In the instant case, defendants' least expensive model retails for well over $100, and we believe even the less discriminating camera user will examine the product carefully before making this sizeable an expenditure. Plaintiffs themselves claim that both their and Polaroid's customers "appreciate precision machinery and technology." Accordingly, we conclude on the undisputed facts in the record, that the purchasers of both plaintiffs' and defendants' cameras are relatively sophisticated, not subject to impulse buying, and likely to exercise substantial care in making a purchase. This factor weighs heavily against plaintiffs' claim of substantial customer confusion.

### D.  *Evidence of Actual Confusion*

Defendants contend that after three years of litigation and discovery plaintiffs are unable to point to a single legitimate instance of actual customer confusion between Pignons and Polaroid, or between the ALPA and SX–70 Alpha cameras. In response, plaintiffs rely on three sources of alleged actual confusion to support their claim that the issue of confusion is materially disputed.

First, plaintiffs place heavy reliance upon a letter from Ms. Rosemary Kennett, an architectural photographer residing in Nashua, New Hampshire. In the letter, dated March 22, 1977, Ms. Kennett stated that when she first heard about Polaroid's Alpha camera, she "wondered" whether Polaroid might have bought and was distributing Pignons' ALPA cameras. She went on to suggest that plaintiffs might request that Polaroid find another name which would, in her opinion, be less confusing to camera buyers.

Whatever its value as a predictor of possible consumer reaction, we cannot agree that the Kennett letter, viewed in the light most favorable to the plaintiffs, constitutes evidence of actual consumer confusion. The tenor of the letter, together with the fact that Ms. Kennett knew who to write to about her concerns,[9] suggests that she was not herself confused about either the source or the nature of the defendants' product, but was simply concerned about the potential response of *other* prospective purchasers. Ms. Kennett's sworn deposition testimony supports this interpretation of the letter. As such, the letter is more appropriately characterized as an inquiry or suggestion, rather than as evidence of actual confusion. See *Alpha Industries, supra,* 616 F.2d at 444–45.

Second, plaintiffs rely on numerous letters and other documents in which Pignons' customers have misspelled the word ALPA, as evidence of actual confusion. As defendants correctly point out however, many of these errors occurred long before Polaroid introduced the SX–70 Alpha, and all seem wholly unrelated to defendants' activities and products. The mere fact that it is possible to misspell or mispronounce plaintiffs' mark, by itself, cannot be considered probative evidence of actual confusion, absent some evidence that the errors were *caused* by defendants' use of the word Alpha. *Cf. Helene Curtis Industries v. Church & Dwight Co.,* 560 F.2d 1325, 1330–31 (7th Cir. 1977), *cert. denied* 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978) (court specifically found that numerous instances of actual confusion were the direct result of defendant's use of a similar mark). On the contrary, the fact that so many loyal Pignons' customers could have mistaken its trade name suggests that the very mark chosen is far less distinctive than plaintiffs would have this Court conclude.

Finally, plaintiffs cite several instances [10] in which customers have sought to purchase

9. The letter was addressed to Mr. Karl Heitz, T.A.G.'s predecessor as Pignons' exclusive distributor in the United States.

10. At the hearing on the instant motion, the Court invited plaintiffs' counsel to bring to its attention any additional evidence of actual con-

SX–70 cameras from them. Certain of these, if proven, might well constitute the kind of evidence necessary to support a claim of actual confusion. However, the extreme paucity of just this sort of evidence in the instant case cuts against, rather than in favor of plaintiffs' claim of likely confusion. *See Fisher Stoves, supra*, 626 F.2d at 194–195 (instances of actual confusion outweighed by the record as a whole); *Amstar Corp.*, 615 F.2d at 263–264; *Continental Corrugated Container v. Continental Group*, 462 F.Supp. 200, 205 (S.D.N.Y.1978) (two instances of actual confusion insufficient to support a finding of likelihood of confusion); Restatement of Torts, § 727 (Comment c), § 728 (Comment a). As the First Circuit recently acknowledged:

> [A]fter the lapse of substantial time if no one appears to have been actually deceived that fact is strongly probative of the defense that there is no likelihood of deception arising out of the use of the mark in question.

*DeCosta v. Columbia Broadcasting System*, 520 F.2d 499, 514 (1st Cir. 1975), *cert. denied* 423 U.S. 1073, 96 S.Ct. 856, 47 L.Ed.2d 83 (1976) (quoting 3 Callman, Unfair Competition, Trademarks and Monopolies, § 80.6, at 562 (3d ed. 1969)).

Polaroid's SX–70 Alpha camera has been on the market approximately four years. The fact that plaintiffs can point to no more than two or three possible instances of actual confusion, we feel, constitutes strong evidence that the spectre of mass confusion alleged in the Complaint simply has not and

most likely will not come to pass.[11] See *Keebler Company v. Rovira Biscuit Corporation*, 624 F.2d 366, 377 (1st Cir. 1980) (reversing the district court's finding of likely confusion in part because of the absence of evidence of actual confusion); *Amstar Corp.*, 615 F.2d at 263 (only three instances of actual confusion after 15 years of concurrent use raises presumption against the likelihood of confusion in the future).

**E. *Strength of Plaintiffs' Mark***

In order to derive any protection whatsoever from the trademark laws, a party must demonstrate that his mark is, or has become, distinctive. *Westward Coach, supra*, 388 F.2d at 634 (citing 3 Callman, Unfair Competition and Trade Marks, § 69 (2d ed.)). It is the distinctiveness of a particular mark which determines its relative "strength" or "weakness" and, accordingly, the degree of protection it will be afforded under law. *Id. Accord, McGregor Doniger*, 599 F.2d at 1131. A strong mark is one which is used only in a fictitious or fanciful manner; whereas a weak mark is one that has meaning in common usage, or one that is merely suggestive or descriptive. *Alpha Industries*, 616 F.2d at 444.

Apart from the question of whether a party has acquired enforceable rights in a mark, several courts have indicated that the relative strength or distinctiveness of a particular mark is probative of the likelihood of confusion resulting from another's use of the same or a similar mark. *See, e. g.*,

---

fusion not contained in the record. In response, counsel referred to a misdirected order for Polaroid's SX–70 Alpha camera allegedly received by Pignons. (Plaintiffs Mem., at 18).

Subsequently, plaintiffs submitted a Supplementary Memorandum, describing an incident in which a customer, after reading about the instant suit, sought to purchase a Sears Alpha camera from T.A.G. (Held Aff., ¶ 2). However, as the affidavit makes clear, the customer called T.A.G. only after a Sears representative informed him that the Sears Alpha was unavailable as a result of this litigation. Accordingly, we cannot accept plaintiffs' contention that this qualifies as a legitimate episode of actual confusion.

11. One of the instances cited in the complaint best exemplifies the difficulties of the plaintiffs' case. The New York Times reported this lawsuit as charging the "SX–70 camera infringes on the trademark of the Swiss company's *Alpha* line of single–lens reflex cameras" (emphasis added). A correction was printed which acknowledged that the camera was incorrectly described and "corrected" it by stating "It is part of the *Alfa* line." (emphasis added). We do not know what the source of the Time's correction was, but it appears that while the Times saw that Alpha and Alfa could be the subject of the confusion, the Times did not believe any confusion could exist between Alpha and Alpa.

*Alpha Industries,* 616 F.2d at 445; *Amstar Corp.,* 615 F.2d at 259–260; *McGregor Doniger,* 599 F.2d at 1130–31.

In the instant case, plaintiffs concede that the mark ALPA was intended to be and is highly suggestive of the Swiss Alps. Plaintiffs' use of photos and drawings of mountains in its packaging and promotional materials, together with the emphasis on Swiss craftsmanship, serve to reinforce the inherent geographic connotation of the mark itself.[12]

Ordinarily, geographically suggestive or descriptive terms are considered "weak" marks, requiring proof of secondary meaning to be enforceable at all under the trademark laws. *Interlego A. G. v. Leslie–Henry Co.,* 214 F.Supp. 238, 243 (M.D.Pa.1963); Restatement of Torts, § 716 (1938). If required to classify plaintiff's mark among the accepted trademark "categories" see *McGregor Doniger,* 599 F.2d at 1131, we would likely adopt the reasoning of the First Circuit in *President and Trustees of Colby College v. Colby College–New Hampshire,* 508 F.2d 804, 807 (1st Cir. 1975), and conclude that:

> While plaintiff's name is not, strictly, a descriptive phrase of general usage, neither can it be termed fanciful, coined, or arbitrary in the same sense as Xerox or Kodak.

*Accord, Amstar Corp.,* 615 F.2d at 260.

In light of our determination of the issue of likely confusion, we need not attempt to "pigeonhole" Pignons' mark into one of the traditional categories, and expressly decline to do so. Nor need we determine whether and to what extent plaintiffs should be required to adduce proof of "secondary meaning." We assume, for the purpose of this motion only, that plaintiffs have made whatever threshold showing may be necessary to acquire enforceable rights in the ALPA mark. We merely note, in accord with the above cited authorities, that plaintiffs' mark is not inherently "strong," but lies somewhere in the middle range of distinctiveness.

This does not end the inquiry, however, since plaintiffs seek in this litigation not rights in their *own* mark, but rather to preclude Polaroid and Sears from making use of the similar, but undisputably distinct term "Alpha." Accordingly, we cannot complete our "strength of the mark" analysis without consideration of the relative distinctiveness of that term as well.

Webster's Third New International Dictionary defines "alpha" as meaning, *inter alia,* "the first" or "beginning." In *Alpha Industries,* the Ninth Circuit upheld the district court's finding that, as a matter of law:

> [T]he word ALPHA is in common usage and has meaning in the English language; that ALPHA occurs in widespread use as a tradename or trademark; and that ALPHA as part of a trade mark or tradename is weak.

616 F.2d at 445.

Plaintiffs' own trademark search reports uncovered 27 federal registrations or applications, 5 state registrations, and 22 directory entries involving the word "alpha" alone or with other words. These included federal registrations for "ALFA" for opthalmic lenses, "ALPHAX" for photographic equipment, and "AGFA" for cameras and parts. In addition, plaintiffs obtained a list of company names listing approximately 1200 uses of the word Alpha with other words, and approximately 75 uses of "alpha" as part of a word.[13] In short, plaintiffs cannot seriously dispute the conclusion that "alpha" is a common word in general usage, and bears no particular distinctiveness.

---

**12.** As defendants correctly indicate, the fact that plaintiffs use the term "ALPA" and not "Alps" does not preclude its characterization as essentially a geographic term. *See In re Charles S. Loeb Pipes, Inc.,* 190 USPQ 238 (TTAB 1976) (nickname "Old Dominion" held to be a geographic term describing Virginia); *Chappell v. Goltsman,* 99 F.Supp. 970, 976 (M.D.Ala.1951), *mod. on other grounds* 197 F.2d 837 (1952) ("Bama," a nickname for the State of Alabama, held to be geographically descriptive).

**13.** Our own informal survey of the Boston Telephone Directory reveals no less than twenty-one listings beginning with the word "alpha," including one for Alpha Photo Service.

Of course, we do not suggest by this analysis that plaintiffs could not, under any circumstances acquire enforceable rights in the term "alpha." Nor do we mean to infer that there need always be a precise identity between plaintiffs' and defendants' marks in order for the former to acquire enforceable rights against the latter. We simply note for the record our view that where, as here, plaintiffs' own mark is relatively indistinctive, and the allegedly infringing term is a common word in ordinary usage, it is reasonable to call upon plaintiffs to bring forth some significant evidence of confusion before granting the relief requested. *See Alpha Industries*, 616 F.2d at 446 (where plaintiff's mark is weak, a stronger showing as to the other factors bearing on likelihood of confusion is properly required); *Amstar Corp.*, 615 F.2d at 259–260 (the greater the number of identical or more or less similar marks already in use on different products, the less the likelihood of confusion).

### F. *Similarity of the Marks*

Plaintiffs argue that Polaroid's use of the term Alpha is likely to generate confusion due to the undisputed similarity between it and Pignons' ALPA mark. Plaintiffs cite numerous instances in which Pignons' customers, members of the trade press, and (allegedly) defense counsel have erroneously referred to its product as an "Alpha" or an "Alfa" camera. However, the mere similarity between the marks is insufficient, without more, to make out a *prima facie* case of likely confusion, particularly where other factors weigh heavily against a finding of confusion. *See Walt Disney Production v. Air Pirates*, 581 F.2d 751 (9th Cir. 1978), *cert. denied* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979) (similarity between marks should not be judged by a simple side by side comparison; mark and alleged imitation should be viewed in light of what occurs in the marketplace); *Miller Brewing Co., supra*, 452 F.Supp. at 446.

In the most recent analysis of the issue we have encountered, the Fifth Circuit has affirmed the view that similarity is determined on the basis of the total effect of the designation, rather than a comparison of individual features. *Amstar Corp.,* 615 F.2d at 260–261. "We must also consider the commercial impression created by the mark as a whole ... it is the overall impression that counts." *Id.*

In the instant case, the parties' respective marketing and promotional techniques go a long way toward eliminating any potential customer confusion. The vast majority of Pignons' cameras are packaged in red and white boxes featuring the word "Swiss" or "Switzerland," a white cross on a red background and the logo of a mountain. By contrast, Polaroid's boxes are white, black or silver, and all bear a distinctive multicolored geometric design which is a federally registered trademark. In addition, it is undisputed that defendants' use of the term Alpha is always accompanied by the well–recognized trade names "Polaroid," "SX–70" and "Land."

Differences in labeling, packaging and advertising have frequently led to a finding that there is no likelihood of confusion. *See, e. g., Keebler Company v. Rovira Biscuit, supra*, 624 F.2d at 378 (striking difference in color between parties' respective soda cracker packages made it "highly unlikely," in the court's view, that a reasonably prudent consumer would confuse one for the other). *Accord, Dwinnell–Wright Co. v. National Fruit Product Co.*, 140 F.2d 618, 623 (1st Cir. 1944); *Ye Olde Tavern Cheese Products, Inc. v. Planters Peanuts Division*, 261 F.Supp. 200, 205–06 (N.D.Ill. 1966), *aff'd per curiam* 394 F.2d 833 (7th Cir. 1967). In particular, where the manufacturer's name and logo are prominently featured, especially on a higher priced "single purchase" item, there is little likelihood of customer confusion. *See Fisher Stoves*, 626 F.2d at 194. *Accord R.G. Barry Corp. v. A. Sandler Co., supra*, 406 F.2d at 116; *Planters Peanuts*, 261 F.Supp. at 206.

Beyond this, it is apparent that similarity between the marks becomes far less probative as a barometer of potential confusion once the goods have been on the market for

a sufficient period to allow scrutiny of actual consumer reaction. (See discussion of actual confusion, *supra*.) Where, as here, both products have been on the market for a number of years, we must accord far greater weight to the absence of significant evidence of actual confusion, than to the mere facial similarity between the marks at issue.

### G. *Defendants' Intent*

Polaroid claims the word Alpha was selected for use as part of the name of its SX–70 series because the cameras contain what is generally known within the company as "improved Alpha electronics" or "Alpha II" electronics. The term has allegedly been used internally at Polaroid since 1972 to describe the electrical circuitry being developed for use in the SX–70 camera.

Plaintiffs do not dispute this explanation but claim that regardless of its origin, defendants' use of the term is confusing and therefore should be enjoined. Plaintiffs further allege that Polaroid's adoption and use of the term Alpha was "deliberate and was done with full knowledge of plaintiffs' mark and Trademark Registration for the mark ALPA and Polaroid's continued use of the mark Alpha is willful." (Complaint at ¶ 32).

■ While the presence or absence of intent to deceive is neither necessary nor sufficient to trigger liability under the trademark laws, it is probative on the issue of likelihood of confusion. *Baker v. Simmons Co.*, 307 F.2d 458, 465 (1st Cir. 1962); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 157–58 (9th Cir. 1963), *cert. denied* 374 U.S. 830, 83 S.Ct. 1870, 10 L.Ed.2d 1053.

In the instant case, despite their general, conclusory allegations of "willfulness," plaintiffs have not adduced a scintilla of evidence of palming off, intent to deceive, or any effort whatsoever by Polaroid or Sears to benefit from Pignons' reputation through their use of the term Alpha. As discussed *supra*, defendants' packaging, advertising and promotional materials flatly belie any such notion. *See Amstar Corp.*, 615 F.2d at 263.

### *Conclusion*

After review of the record and memoranda in this case, we conclude that plaintiffs have failed to raise a genuine dispute as to whether defendants' use of the common word Alpha is likely to confuse customers about either the source of their goods, or a possible relationship between their respective business concerns. The defendants' use of the word Alpha is not likely to cause confusion, mistake or deception. Since likelihood of confusion is the essential element of a successful trademark infringement suit, the defendants are entitled to summary judgment on Counts One, Three, Five, and Eight, charging state and federal trademark infringements. Further, since likelihood of confusion is also an essential element of an unfair competition suit premised on the defendant's use of the plaintiff's mark, *Quabaug Rubber Co. v. Fabiano Shoe Co., Inc., supra*, the defendants are entitled to summary judgment on Counts Two and Seven, charging unfair competition.

## III. PLAINTIFFS' ANTI–DILUTION CLAIMS

■ Plaintiffs' Fourth and Sixth causes of action allege violations of the Massachusetts "anti–dilution" statute, M.G.L.A. c. 110B, § 12. That section authorizes the Court to grant injunctive relief when it finds that the defendant's activities raise a likelihood of injury to the plaintiff's business reputation or "dilution of the *distinctive quality*" of plaintiff's mark (emphasis added). In view of defense counsel's representation to the Court that Polaroid has ceased manufacturing and distributing SX–70 cameras bearing the model designation "Alpha," plaintiffs' claims under section 12 appear to be moot.

Beyond this, we note that relief under section 12 has been limited to only the most distinctive trademarks. *See, e. g., S.S. Kresge Co. v. United Factory Outlet, Inc.*, 598 F.2d 694, 697 (1st Cir. 1979); *Mr. Boston Seafoods Corp. v. Mr. Boston Distiller,*

**818**

*Inc.*, 315 F.Supp. 574, 577 (D.Mass.1970); *Tiffany & Co. v. Boston Club, Inc.*, 231 F.Supp. 836, 846 (D.Mass.1964). As discussed *supra* at pp. 814–816 we are unconvinced plaintiffs' mark has any particular inherent distinctiveness. Plaintiffs have refrained from attempting to demonstrate that their mark may have acquired such distinctiveness through extensive sales, advertising and prior use, insisting instead that, "No secondary meaning is required to be shown, as a matter of law, because the mark ALPA is not a geographically descriptive mark . . . " (Plaintiffs' Mem. at page 6).

Construing all facts in the light most favorable to the plaintiffs, we see no basis upon which injunctive relief would be proper in the instant case. Accordingly summary judgment in favor of the defendants is also warranted with respect to the plaintiffs' anti–dilution claims contained in Counts Four and Six.

*Summary*

In accordance with the above, summary judgment is to be entered for the defendants on all counts in this action and the complaint dismissed.

So ordered.