**PROMOTIONAL MARKETING CORP., Plaintiff**
v.
**THE MASSACHUSETTS STATE LOTTERY COMMISSION and GLENDINNING COMPANIES OF CONNECTICUT, INC., Defendants**

**No. 81-1234-MC**

United States District Court
Commonwealth of Massachusetts

**June 12, 1981**

**Thomas J. Sartory, Esq.** counsel for plaintiff

**James C. Burling, Esq.,** counsel for plaintiff

**Michael Broad AAG,** counsel for defendants

**Gregory A. Madera,** counsel for defendants

**Gerald W. Griffin,** counsel for defendants

## MEMORANDUM AND ORDER

**KEETON, R.E.** On May 15, 1981 Promotional Marketing Corporation commenced this action seeking an injunction, declaratory relief, and

damages for alleged trademark infringements and unfair competition. The action arises under the trademark laws of the United States, 15 U.S.C. secs. 1051 **et seq.** (Lanham Act), the Massachusetts anti-dilution statute, Mass. Gen. Laws Ann., ch. 110B, sec. 12, and common law doctrines of trademark infringement and unfair competition. This matter is now before the court on plaintiff's motion for a preliminary injunction, submitted by agreement of the parties on the basis of affidavits, materials produced in discovery, memoranda and oral argument at the hearing on June 8, 1981.

## FINDINGS OF FACT

Plaintiff sells advertising and promotional services to manufacturers and distributors of consumer products. Beginning in 1977, plaintiff sold an advertising program to S.C. Johnson and Sons, Inc. ("Johnson"), a manufacturer of household products. The promotion involved the use of discount coupons bearing the name "Cash in a Flash." Purchasers of specific Johnson products received free "Cash in a Flash" coupons that entitled the holders to prizes when they matched a "Cash in a Flash" coupon number with a number displayed in various retail outlets. The "Cash in a Flash" promotion continued through 1979. Johnson purchased a similar "Cash in a Flash" advertising campaign from plaintiff in 1981.

In October 1979, Mr. John Heikes, a self-employed advertising agent, communicated with plaintiff and alleged ownership rights in the phrase "Cash in a Flash." Plaintiff asked Mr. Heikes to substantiate his claim and several weeks later, Mr. Heikes responded with documentary evidence showing prior use of the name "Cash in a Flash" in similar advertising promotions dating back to 1967. Shortly after the initial contact by Mr. Heikes, plaintiff commenced proceedings with the United States Patent and Trademark Office (USPTO) to register the "Cash in a Flash" mark. Although the registration is still pending, USPTO has indicated that the mark appears to be entitled to registration. At no time, however, did plaintiff notify USPTO of Mr. Heikes's competing claim to rights in the mark.

The defendant, Glendinning Companies of Connecticut, Inc. ("Glendinning"), is also engaged in promotional advertising activities. One division of Glendinning markets promotion services to state lottery agencies. In 1979 Glendinning contracted with the co-defendant, the Massachusetts State Lottery Commission ("Commission") to revise the marketing procedures of that state's instant lotteries. In April 1980, pursuant to the contract, Commission marketed an instant lottery under the name "Cash in a Flash." As part of its promotional services, Glendinning provided Commission with lottery tickets bearing the name "Cash in a Flash." In April 1980, plaintiff notified Commission of an alleged trademark infringement and demanded that the defendant immediately terminate its "Cash in a Flash" lottery, or purchase a royalty-bearing license from plaintiff. In May 1980, defendants responded by denying that the "Cash in a Flash" lottery constituted a trademark infringement. Plaintiff took no further action and the "Cash in a Flash" lottery ceased of its own accord several months later. On April 7, 1981, Commission initiated a second "Cash in a Flash" instant lottery. This lottery also utilized tickets bearing the name "Cash in a Flash" supplied by Glendinning. In addition, Glendinning contracted with the Michigan Bureau of State Lottery ("Bureau") on April 23, 1981 to deliver tickets for an instant lottery that will commence July 1, 1981. Bureau's lottery tickets will also bear the name "Cash in a Flash." Glendinning has already expended over $350,000 in printing these lottery tickets.

## CONCLUSIONS OF LAW

To establish entitlement to a preliminary injunction, plaintiff must show the following:

"(1) that a plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction."

**Planned Parenthood League of Massachusetts v. Bellotti,** 641 F.2d 1006, 1009 (1st Cir. 1981) (quoting **Women's Community Health Ctr., Inc. v. Cohen,** 477 F. Supp. 542, 544 (D. Me. 1979) (citations omitted).

### (a) Irreparable Harm

Plaintiff has failed to demonstrate that defendants' use of the name "Cash in a Flash" is causing irreparable harm. The evidence before the Court does not support the plaintiff's claim that the alleged infringement will cause a loss of credibility, reputation and goodwill in the promotional and marketing industry. Plaintiff does not contend that Commission or Bureau compete in the same market with Johnson. Therefore, there is no threat that defendant's continued use of "Cash in a Flash" will cause Johnson to lose sales. Similarly, plaintiff is neither in the market nor licensed to be in the market to sell lottery promotion services[1] and therefore cannot show that the alleged infringements injure plaintiff's ability to compete in lottery promotion markets. Moreover, plaintiff's action for damages offers an adequate legal remedy for any lost royalties caused by the alleged infringements.

### (b) Balance of Harm

In contrast to the limited and compensable harm that the alleged infringements may cause the plaintiff, a preliminary injunction would cause widespread and irreparable injury to the defendants. An injunction would cause Commission to suffer irretrievable lost revenues from its instant lottery. Furthermore, an injunction is likely to damage Commission's public credibility and diminish its ability to conduct successful lotteries in the future. Glendinning would suffer immediate losses in excess of $350,000, the expenses incurred in printing lottery tickets for Bureau. Finally, by disrupting the Massachusetts and Michigan lotteries, a preliminary injunction is likely to injure Glendinning's business reputation and to impede Glendinning's ability to compete in the lottery promotion market.

### (c) Likelihood of Success on the Merits

For several reasons, the Court concludes that the plaintiff has not succeeded in showing a likelihood that plaintiff will succeed on the merits of its claim.[2] First, it is questionable whether the phrase "Cash in a Flash" can function as a valid trademark. The phrase describes common qualities of all instant prize promotional games and can apply in numerous contexts for a wide range of products. Plaintiff concedes that "Cash in a Flash" has no secondary meaning but contends that the phrase is suggestive. Without deciding the matter, this Court notes its strong reservations that "Cash in a Flash" suggests more than the ordinary

---

[1] The complaint alleges that Scientific Games Development Corp., a competitor of Glendinning in marketing lottery services, is plaintiff's exclusive licensee. Discovery depositions reveal that this allegation is unsupported in fact.

[2] Because the Court has found neither irreparable harm nor a favorable balance of harm for plaintiff, the Court need not decide the more complicated legal issues concerning the merits of plaintiff's claim. The Court discusses these matters merely to indicate that numerous problems do exist, and that the Court is unable to find a probability that plaintiff will succeed on the merits.

meaning of that phrase. See, **Devcon Corp. v. Woodhill Chemical Sales Corp.,** 455 F.2d 830 (1st Cir.), **cert. denied,** 409 U.S. 845 (1972) (questioning the suggestiveness of the registered trademark "5 MINUTE").

Even if "Cash in a Flash" should be determined to be a valid trademark, defendants' have raised serious questions about plaintiff's ownership rights in the mark. "(R)egistration does not create the underlying right in a trademark. That right, which accrues from the use of a particular name or symbol, is essentially a common law property right . . . ." **Keebler Co. v. Rovira Biscuit Corp.,** 624 F.2d 366, 372 (1st Cir. 1980). Plaintiff acknowledges that Mr. Heikes and his predecessors in interest used "Cash in a Flash" as early as 1967. Plaintiff argues, however, that Mr. Heikes abandoned the mark. Without deciding the matter, the Court questions the factual and legal basis of plaintiff's abandonment theory.[3] The Court also notes that plaintiff may have undermined the effectiveness of its registration by failing to notify USPTO of Mr. Heikes's claim to the mark. See **Ets. Larenois v. Lazarus,** 168 USPQ 604 (USPTO TTAB, 1970) (cancelling a trademark registration because of fraudulent statements made to USPTO in the registration application).

Even assuming that it should be determined that "Cash in a Flash" is a valid trademark and that plaintiff owns the rights to the mark, the question remains whether plaintiff can successfully establish an infringement by defendants. To establish an infringement under Section 43(a) of the Lanham Act, 15 U.S.C. sec. 1125(a), plaintiff must show "a substantial likelihood that the public will be confused as to the source of the goods." **Fischer Stoves, Inc. v. All Nighter Stove Works, Inc.,** 626 F.2d 193, 194 (1st Cir. 1980). Retail promotion coupons and state lottery tickets are significantly different commodities. The immediate purchaser of promotional services, retail manufacturers and state lottery agencies, are sophisticated business enterprises that are unlikely to make incorrect associations based on the phrase "Cash in a Flash." In addition, lottery tickets and retail promotional coupons are marketed differently to the public. There is little likelihood of confusion because of these marketing differences, the dissimilarity of the products, the weak distinctiveness of the mark, and the absence of any evidence of actual confusion. See **Pignons S.A. de Mecanique v. Polaroid Corp.,** 498 F. Supp. 805, 810-817 (D. Mass. 1980). An ordinary purchaser of Commission lottery tickets is unlikely to think that he is purchasing "Cash in a Flash" coupons associated with Johnson household products.

Nor has the plaintiff demonstrated a likelihood of success under the Massachusetts anti-dilution statute, Mass. Gen. Laws Ann., ch. 110B, sec. 12. "(R)elief under section 12 has been limited to only the most distinctive trademarks." **Pignons S.A. de Mecanique, supra,** 498 F. Supp. at 817. As discussed above, "Cash in a Flash" appears to lack the requisite distinctiveness. See **S. S. Kresge Co. v. United Factory Outlet, Inc.,** 598 F.2d 694, 697 (1st Cir. 1979).

(d) **Public Interest**

Finally, the preliminary relief sought by plaintiff would terminate the Massachusetts state lottery and potentially delay the start of the Michigan lottery. Both lotteries raise revenues for public purposes. For this reason, there is a

---

[3] *The Court does not determine whether plaintiff may have a proprietary interest in "Cash in a Flash" against the defendants even if its trademark is ineffective against Mr. Heikes.*

high probability that an injunction would adversely affect the public interest.

### ORDER

For the foregoing reasons, it is ordered:

Plaintiff's motion for a preliminary injunction is denied.[4]

**Robert E. Keeton**
**United States District Judge**

---

[4] This memorandum does not address Commission's motion to dismiss. Commission argues that plaintiff's action is barred by the Eleventh Amendment and the doctrine of sovereign immunity. Because defendant Glendinning is unaffected by Commission's motion, it has been necessary for the Court to consider on the merits the motion for preliminary injunction. Having determined that preliminary relief must be denied for reasons that apply to Commission as well as Glendinning, the Court has not in this memorandum addressed the motion to dismiss.