FISHER STOVES, INC., Plaintiff, Appellant,

v.

ALL NIGHTER STOVE WORKS, INC., Defendant, Appellee.

No. 79-1636.

United States Court of Appeals, First Circuit.

Argued April 7, 1980.

Decided July 21, 1980.

Charles A. Russell, Concord, N. H., with whom Roger B. Phillips and Maynard, Perkins & Phillips, Concord, N. H., were on brief, for appellant.

John C. Hilton, Hartford, Conn., for appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

ALDRICH, Senior Circuit Judge.

Plaintiff, Fisher Stoves, Inc., brought this action in the District Court for the District of New Hampshire against defendant, All Nighter Stove Works, Inc., seeking injunctive and monetary relief for infringement of its common law trademark, unfair competition, misappropriation of confidential information, and violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125. Jurisdiction was based on diversity of citizenship, 28 U.S.C. § 1332(a)(1) and on the Lanham Act, 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) and (b). After trial to the court on liability only, the court found against plaintiff on all counts and dismissed the complaint. Plaintiff appeals, undertaking the heavy burden of showing the findings to have been clearly erroneous. *See* F.R. Civ.P. 52(a); *Keebler Co. v. Rovira Biscuit Co.*, 1 Cir., 1980, 624 F.2d 366 at 377; *Armstrong Cork Co. v. World Carpets, Inc.*, 5 Cir., 1979, 597 F.2d 496, 501; *Hawley Prod-*

*ucts Co. v. United States Trunk Co.*, 1 Cir., 1958, 259 F.2d 69, 78.

In May, 1976, Robert L. Fisher, designer of a welded steel woodburning stove, granted plaintiff a license to manufacture and sell such stoves in New England under Fisher's registered trademark ("Fisher Stove") and design patent, neither of which was shown to be involved in this case. Fisher stoves were also manufactured in Robert Fisher's home state of Oregon, and in other parts of the country under license. James Morande, proprietor of the Olde Towne and Country Store in East Hartford, Connecticut, became one of plaintiff's dealers. In February, 1977, Morande formed defendant corporation, which began production and sale of four models of woodburning stoves in a number of respects remarkably similar to plaintiff's. Both were black rectangular boxes of welded steel construction, mounted on four legs; each had a two-level top, higher in the back than in the front and connected by an angular surface. Each had a door in the front with a long metal latch handle and one or two air controls, with a small metal shelf or ash fender below it. The stoves thus resembled each other in overall silhouette, as well as in a number of lesser details.

■ Plaintiff's chief claim is that defendant deliberately copied the configuration of its stove, which is assertedly distinctive and closely identified with plaintiff, and thereby profited from purchases by confused customers. The court found, however, that plaintiff failed to carry its burden of showing confusion, or even a likelihood of confusion. It is axiomatic that one claiming infringement need not point to actual instances of confusion. *Baker v. Simmons Co.*, 1 Cir., 1962, 307 F.2d 458, 463. A mere possibility, however, is not enough, *HMH Publishing Co. v. Brincat*, 9 Cir., 1974, 504 F.2d 713, 717; there must be a substantial likelihood that the public will be confused as to the source of the goods. *Valmor Products Co. v. Standard Products Corp.*, 1 Cir., 1972, 464 F.2d 200, 202, 203; *T & T Mfg. Co. v. A. T. Cross Co.*, D.R.I., 1978, 449 F.Supp. 813, 819, *aff'd on other grounds*, 1 Cir., 1978, 587 F.2d 533, *cert.*

*denied*, 441 U.S. 908, 99 S.Ct. 2000, 60 L.Ed.2d 377. We are satisfied that the court's finding that there was no such likelihood was not clearly erroneous.

Plaintiff's is primarily a single-purchase article, and not a product subject to impulse buying. As has elsewhere been observed,

"'every product has its own separate threshold for confusion of origin.' The greater the value of an article the more careful the typical consumer can be expected to be; the average purchaser of an automobile will no doubt devote more attention to examining different products and determining their manufacturer or source than will the average purchaser of a ball of twine." *McGregor-Doniger, Inc. v. Drizzle Inc.*, 2 Cir., 1979, 599 F.2d 1126, 1137, quoting *Taylor Wine Co. v. Bully Hill Vineyards, Inc.*, 2 Cir., 1978, 569 F.2d 731, 733.

*See Blue Bell, Inc. v. Jaymar-Ruby, Inc.*, 2 Cir., 1974, 497 F.2d 433, 435–36 & n.5; *Estate Stove Co. v. Gray & Dudley Co.*, 6 Cir., 1930, 41 F.2d 462, 463–64, *vacated on other grounds*, 6 Cir., 1931, 50 F.2d 413. A consumer considering a stove of either brand involved here faces an investment of several hundred dollars. Sales efforts necessarily result in considerable education of the prospective buyer. The court found, "A party involved in such a purchase would clearly carefully examine the stove and would not be misled as to the source of such a product." One of plaintiff's witnesses, a dealer in both Fisher and All Nighter stoves, testified that it took him an average of one to two hours to sell a stove, and observed, "People just want to be educated." There was no evidence that he, or any other dealer, "educated" buyers in the wrong direction. Rather, a dealer testified that as a result of education and papers involved there remained no chance of confusion. *Cf. Intricate Metal Products, Inc. v. Schneider*, 9 Cir., 1963, 324 F.2d 555, 562.

■ Each manufacturer displayed its name and logo prominently on the door of the front of the stove, clearly identifying its origin. Plaintiff correctly reminds us that display of the manufacturer's name is not

always determinative of the confusion issue. *T & T Mfg. Co. v. A. T. Cross Co.*, ante, 449 F.Supp. at 822; *Teledyne Industries, Inc. v. Windmere Products, Inc.*, S.D.Fla., 1977, 433 F.Supp. 710, 739. In the case of a relatively high-priced, single-purchase article, however, "there is hardly likelihood of confusion or palming off when the name of the manufacturer is clearly displayed." *Bose Corp. v. Linear Design Labs, Inc.*, 2 Cir., 1972, 467 F.2d 304, 310. The district court noted certain other differences. While we are mindful that an overall impression of similarity is more important than specific differences revealed on side-by-side comparison, *E. I. DuPont DeNemours & Co. v. Yoshida International, Inc.*, E.D.N.Y., 1975, 393 F.Supp. 502, 510, these differences also, especially in the context of the single-purchase article, support the court's rejection of the likelihood of confusion.

While plaintiff claimed incidents of actual confusion, the court found this evidence ambiguous. Much of it was to the effect that consumers accused one manufacturer of copying the other and wanted to know which stove was made first, or inquired as to the differences between the two stoves, or asked if the two companies were affiliated. Confusion, in the legal sense means confusion of source. *Keebler Co. v. Rovira Biscuit Co.*, ante, 624 F.2d at 372, 378; *TGI Friday's, Inc. v. International Restaurant Group, Inc.*, 5 Cir., 1978, 569 F.2d 895, 899; *Baker v. Simmons Co.*, ante, 307 F.2d at 461. Far from revealing such confusion, the above statements indicate that these customers, at least, had the difference in source clearly in mind.

More to the point is the testimony of plaintiff's president that inquirers at an early country fair said they had seen the Fisher booth at another part of the fair, apparently referring to the All Nighter booth, and that they apparently thought certain All Nighter options were available on Fisher stoves. Whatever weight this evidence was entitled to, the court could find it overcome on the record as a whole. ■ In addition, the court found that the elements of plaintiff's design configuration upon which it relied to show similarity were functional in nature. Because of the consuming public's "interest in free competition and in economic and technological progress," functional features which are not the subject of a valid patent or copyright may be imitated with impunity. *Keebler Co. v. Rovira Biscuit Co.*, ante, 624 F.2d at 378; *Intricate Metal Products, Inc. v. Schneider*, ante, 324 F.2d at 562; *see General Radio Co. v. Superior Radio Co.*, 3 Cir., 1963, 321 F.2d 857, 864, *cert. denied*, 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 973; *Crescent Tool Co. v. Kilborn & Bishop Co.*, 2 Cir., 1917, 247 F. 299, 301; 3 Callman, The Law of Unfair Competition, Trademarks and Monopolies, § 77.4(e)(1) at 388 (1969). The functional features were not only the basics, black iron to radiate heat, four legs to keep the stove off the floor to prevent fire, a long metal door handle to serve as a gravity lock mechanism, air controls to govern the rate of burning, and an ash fender to keep ashes off the floor, but the design itself. The two-level top, assertedly the most distinctive feature of plaintiff's stove, serves three functions: it creates turbulence within the stove for better combustion; it provides two cooking surfaces of different temperatures; and it prevents smoke from escaping when the door is opened. Plaintiff's advertising emphasized the functional nature of these features. The court's conclusion that these were all functional is well supported by the record. To the extent that copying functional aspects required defendant to take special precautionary steps to ensure that buyers would not be misled as to source, *Sears, Roebuck & Co. v. Stiffel Co.*, 1964, 376 U.S. 225, 232, 84 S.Ct. 784, 789, 11 L.Ed.2d 661; *Kellogg Co. v. National Biscuit Co.*, 1938, 305 U.S. 111, 120, 59 S.Ct. 109, 114, 83 L.Ed. 73, defendant's answer is the prominent displaying of its name and logo on its front door. There were, accordingly, two adequate grounds for the court's result.

Plaintiff claims that the court, in granting defendant's request for a ruling of law, erred by placing upon it the burden of proving nonfunctionality. It is not at all clear that this ruling was error. *See General Radio Co. v. Superior Electric Co.*, ante, 321 F.2d at 864; *Zippo Mfg. Co. v. Rogers*

*Imports, Inc.*, S.D.N.Y., 1963, 216 F.Supp. 670, 679; *Trico Products Corp. v. Ace Products Corp.*, D.Conn., 1929, 30 F.2d 688, 689. Even assuming, however, that plaintiff is correct that the burden should have been on the defendant to prove functionality as an affirmative defense, the court's opinion clearly shows that it was not a procedural burden, but the record, that led to its ultimate conclusion. It stated that "there is no evidence that any item of the design configuration of plaintiff's stove is nonfunctional in nature." There could be no further burden on defendant.

Plaintiff designed a stove with several functional innovations. These were enthusiastically received in the marketplace. Defendant, in imitating them, is doubtless sharing in the market formerly captured by the plaintiff's skill and judgment. While we sympathize with plaintiff's disappointment at losing sales to an imitator, this is a fact of business life. *See Kellogg Co. v. National Biscuit Co.*, ante, 305 U.S. at 122, 59 S.Ct. at 115.

■ Plaintiff's only other point requiring mention is defendant's alleged misappropriation of plaintiff's dealer list, which had accidentally been left in Morande's store and copied by him before its return. In order to be protected, a trade secret must truly be secret. *Kewanee Oil Co. v. Bicron Corp.*, 1974, 416 U.S. 470, 475, 94 S.Ct. 1879, 1883, 40 L.Ed.2d 315; Restatement, Torts, § 757, Comment b. The burden of proving secrecy falls on the plaintiff. 2 Callman, ante, § 53.3 at 387. There was evidence in the record that plaintiff's dealer lists were available for the asking. Moreover, even a bona fide trade secret is not protected against discovery by fair means, including accidental disclosure. *Kewanee Oil Co. v. Bicron Corp.*, ante, 416 U.S. at 476, 94 S.Ct. at 1883.

*Affirmed.*