**LITTLE SOULS, INC., Plaintiff,**

**v.**

**Les PETITS a/k/a Les Petits, Inc., Martha Collins Gray and Robert Gray, Defendants.**

**Civ. A. No. 91–12497–S.**

United States District Court, D. Massachusetts.

March 19, 1992.

C. Frederick Koenig, Volpe & Koenig, P.C., Philadelphia, Pa., Robert D. Charles-

ton, Del Collo, Mazzanti & Charleston, Paoli, Pa., William S. Strong, Kotin, Crabtree & Strong, Boston, Mass., for plaintiff.

Robert B. Fraser, Goodwin, Proctor & Hoar, Boston, Mass., Robert Lloyd Raskopf, Townley & Updike, New York City, for defendants.

## MEMORANDUM AND ORDER ON THE LEGAL CONSEQUENCES WHICH FLOW FROM THE COURT'S DECEMBER 31, 1991 FINDINGS OF FACT

SKINNER, District Judge.

Plaintiff Little Souls, Inc., brings this action against defendants Les Petits, Martha Collins Gray and Robert Gray, alleging copyright infringement under 17 U.S.C. § 501 *et seq.* and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1125. Plaintiff argues that defendants' soft-sculptured Les Petits dolls, marketed principally as toys for children, are illicit copies of plaintiff's three lines of soft-sculptured Little Souls, Littler Souls, and Special Edition dolls, marketed primarily as folk art for the adult collector. Plaintiff further contends that there is a likelihood of consumer confusion as to the origin of the various doll lines.

### Background

On September 24, 1991, plaintiff filed its complaint for copyright and trademark infringement seeking injunctive relief, impoundment of defendants' dolls, statutory damages, and attorney's fees. On October 4, 1991, a preliminary scheduling conference was held by this court at which defendants agreed not to sell their Les Petits dolls pending resolution of this matter at trial. After a bench trial I issued a December 31, 1991 order entitled Findings of Fact, detailing the history of this case and setting forth my findings of fact. I also directed counsel to submit post-trial briefs illuminating the legal consequences entailed by my findings of fact.

### Discussion

### A. Copyright Infringement

■ In order to prevail on a claim of copyright infringement a party must show both ownership of a valid copyright and "copying" of the protected work by the alleged infringer. *Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.,* 843 F.2d 600, 605 (1st Cir.1988) (citing 3 N. Nimmer, *The Law of Copyright* § 13.01 at 13–3 (1987)). In this circuit, the test for "copying" is itself a two pronged inquiry, requiring the court to determine first whether there has been actual copying and then whether such copying constitutes "illicit copying" or "unlawful appropriation". See *Concrete Machinery,* 843 F.2d at 608 (citing *Arnstein v. Porter,* 154 F.2d 464, 468 (2d Cir.1946)). Determining actual copying "involves 'dissection' of the work, perhaps aided by expert testimony, to assess whether there are sufficient articulable similarities to justify a finding that the defendant has copied from the protected work." 843 F.2d at 608. As explained by our court of appeals, "[b]y dissecting the accused work and identifying those features which are protected in the copyrighted work, the court may be able to determine as a matter of law whether or not the former has copied aspects of the latter." *Id.*

Once actual copying is established, "the court must determine whether the copying is sufficiently substantial to constitute 'unlawful appropriation' ('illicit copying')." *Concrete Machinery,* 843 F.2d at 608 (citing *Arnstein,* 154 F.2d at 468). Here the trier of fact "applies the 'ordinary observer' test, unaided by dissection or expert testimony, to determine whether the copying resulted in substantial similarity between the works." *Id.* (citing *Arnstein,* 154 F.2d at 468; *Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 977 (2d Cir.), *cert. denied,* 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980); *Universal Athletic Sales Co. v. Salkeld,* 511 F.2d 904, 907 (3d Cir.), *cert. denied,* 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975)). " 'The test is whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value.' " *Concrete*

*Machinery,* 843 F.2d at 607 (quoting *Educational Testing Services v. Katzman,* 793 F.2d 533, 541 (3d Cir.1986).

In my Findings of Fact, I found that "the Little Souls and Special Edition dolls (but not the Littler Souls) manufactured by the plaintiff have an identifiable look which is reasonably represented in the items submitted for copyright." Findings of Fact, 6. Thus, plaintiff has a valid copyright with respect to the distinctive look of the Little Souls and Special Edition dolls, but not the Littler Souls dolls. As noted in that December 31 order, the distinctive look of the Little Souls and Special Edition dolls is achieved "by reason of their hairstyles and principally the expressions on their faces." *Id.* at 4. I also found that defendant Martha Collins Gray deliberately copied the body structure, face structure, and hair of the Little Souls dolls and incorporated these sculptural designs into her Les Petits dolls. *Id.* at 3. Mrs. Gray additionally copied the angel wings from Little Souls angels and used them in Les Petits angels. *Id.*

■ The copyright laws are intended to protect works of art and not designs that are inherently functional. *See Carol Barnhart, Inc. v. Economy Cover Corp.,* 773 F.2d 411, 418 (2d Cir.1985) (holding that mannequins of partial human torsos used to display articles of clothing are not copyrightable because any artistic or aesthetic feature of mannequins is inseparable from the forms' utilitarian function); *Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.,* 834 F.2d 1142, 1146–47 (2d Cir. 1987) (holding that a bicycle rack with a unique design is not copyrightable because the aesthetic design aspects are not conceptually separable from the intrinsic utilitarian function of the bicycle rack). For purposes of 17 U.S.C. § 102(a)(5), the definition of a protected sculptural work

> shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined by this section, shall be considered a sculptural work only if, and only to the extent that, such design incor-

porates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

17 U.S.C. § 101. A "useful article" is defined as "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." *Id.*

■ Both the construction of the arm hole and the face structure of plaintiff's dolls have intrinsic utilitarian functions. The arm hole is designed to accommodate plaintiff's automatic stuffing machine and to prevent the arm from swinging excessively. The face structure is designed to make the face of the doll look more realistic. Neither the construction of the arm hole nor the unadorned face structure of plaintiff's dolls are sculptural features that can be identified separately from, and that are capable of existing independently of, their utilitarian functions. Consequently, both the arm hole construction and the face structure of plaintiff's dolls are not protected expression within the meaning of the copyright laws, even though such construction is distinct from other representative dolls submitted in evidence.

■ Some aspects of plaintiff's dolls that are clearly protected expression include the distinctive look of their facial expressions, hair, and the angel wings of the Special Edition angels. As actual copying of certain features of plaintiff's dolls has been established, the real question is whether defendant's copying constituted unlawful appropriation. Applying the ordinary observer test, the issue becomes whether a reasonable ordinary observer would find the works substantially similar. "In the words of Judge Learned Hand, two works are substantially similar if 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same.'" *Concrete Machinery,* 843 F.2d at 607 (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.,* 274 F.2d 487, 489 (2d Cir.1960)).

Applying the ordinary observer test, unaided by dissection or expert testimony, I find there is no substantial similarity between plaintiff's Little Souls dolls and defendants' Les Petits dolls. As I stated in my Findings of Fact, "the Les Petits dolls do not share the look and feel which distinguishes the Little Souls dolls even though the look and feel of the Les Petits dolls was achieved by Mrs. Gray by using construction techniques and materials which she copied from Little Souls." *Id.* at 6. For a more extensive review of the similarities and differences between the look and feel of the Little Souls and Special Edition dolls in comparison to the look and feel of the Les Petits dolls, the reader is referred to my December 31 order. The finding of a lack of substantial similarity applies equally to the Les Petits dolls when compared to plaintiff's Special Edition and Littler Souls dolls. Since plaintiff was unable to show substantial similarity between any of these doll lines, plaintiff's copyright infringement claims fail as a matter of law.

The only exception to this holding is with respect to the Angel dolls. Since the sole Les Petits Angel doll defendants ever created was substantially disassembled before this litigation arose, comparison with the Little Souls Angels on the market is particularly difficult. I hold that plaintiff failed to meet its burden of proof for demonstrating illicit copying with regard to the only Les Petits Angel in existence at the time of trial.

**B. Unfair Competition/Trademark Infringement**

■ Plaintiff's unfair competition claims are based upon the Little Souls trademark and the secondary meaning that plaintiff alleges has arisen from the distinctive expression of the Little Souls dolls. Plaintiff's claims are brought pursuant to 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a), commonly known as section 32 and section 43(a) of the Lanham Act, respectively. In order to prevail under either provision, plaintiff must show a likelihood of confusion among consumers as to the source of the goods at issue. *See* 15 U.S.C. §§ 1114, 1125(a); *Purolator, Inc. v. EFRA Distrib-*utors, *Inc.*, 687 F.2d 554, 559 (1st Cir.1982) (holding that likelihood of confusion is "[t]he key element in any infringement action"); *Quabaug Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 160 (1st Cir.1977).

While I find "the absence of substantial similarity for purposes of a copyright action leaves little basis for asserting a likelihood of confusion or palming off for purposes of a claim under § 43(a) of the Lanham Act," *Conan Properties, Inc. v. Mattel, Inc.*, 712 F.Supp. 353, 362 (S.D.N.Y. 1989) (quoting *Warner Bros. Inc. v. American Broadcasting Cos.*, 720 F.2d 231, 246 (2d Cir.1983)), *see also Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 918 (2d Cir.1980), courts in this circuit must weigh the following eight factors in assessing likelihood of confusion:

(1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of plaintiff's mark.

*Boston Athletic Asso. v. Sullivan*, 867 F.2d 22, 29 (1st Cir.1989).

**(1) *Similarity of the Marks***

Similarity of marks should be "determined on the basis of the total effect of the designation, rather than a comparison of the individual features." *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 817 (1st Cir.1987). Although the "Little Souls" and "Les Petits" marks both connote the idea of a group of small children, I find that the total effect of the designations are not likely to lead to confusion in the minds of consumers since the marks are entirely different in sight and sound.

**(2) *Similarity of the Goods***

Although defendants have copied a number of the construction techniques for the Les Petits dolls from plaintiff's dolls, the look and feel of the dolls remain distinctly different. Among the similarities and dif-

ferences noted on pages 3–6 of my Findings of Fact order were the following. Whereas the plaintiff's dolls have a distinctive "assertive and shrewd" facial expression, defendant's dolls create "an impression of total vacuity". Whereas plaintiff's dolls are of both sexes, defendants produce only girl dolls. Plaintiff's dolls have a very firm stuffing density, have clothes of different designs and baby shoes either sewn or glued in place, and are relatively stiff and quite heavy; defendant's dolls are "lightly stuffed with resilient material that can be easily squeezed, returning to its original form", have removable dresses which are all of the same design with no shoes, and are smaller and much lighter than plaintiffs Little Souls and Special Edition dolls. Finally, while the hair material for both plaintiff's and defendants' dolls is the same, the hairstyles for the Les Petits dolls is typically much shorter and simpler.

Although defendants copied the face structure and arm hole construction of plaintiff's dolls, these features do not qualify for trademark protection since they are functional in nature. *See Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*, 626 F.2d 193, 194 (1st Cir.1980). "Because of the consuming public's 'interest in free competition and in economic and technological progress,' functional features which are not the subject of a valid patent or copyright may be imitated with impunity." *Id.* (quoting *Keebler Co. v. Rovira Biscuit Co.*, 624 F.2d 366, 378 (1st Cir.1980)).

I find no overall substantial similarity between plaintiff's and defendants' soft-sculptured dolls for the purpose of plaintiff's trademark infringement claim.

(3) *Relationship Between the Parties' Channel of Trade*

(4) *Relationship Between the Parties' Advertising*

(5) *Classes of Prospective Purchasers*

As these factors are interrelated in this case, I deem it proper to treat them together. *See Boston Athletic Asso.*, 867 F.2d at 30 (citing *Volkswagenwerk Aktiengesellschaft*, 814 F.2d at 818). Both plaintiff's and defendants' dolls are sold in gift and boutique shops where the retail price is traditionally keystoned, i.e., doubled, so to this extent their channels of trade are very similar. But plaintiff's dolls by their creator's own admission are not toys but rather folk art for the adult collector. In contrast, defendants' dolls are clearly marketed as toys, as evidenced by the removable nature of the doll's clothing, lighter weight, and reduced stuffing in the faces and bodies of the Les Petits dolls. The classes of prospective purchasers are therefore likely to be quite different.

In addition, the evidence at trial showed that defendant's lowest priced Les Petits doll sells for $55.00 at wholesale, and plaintiff's lowest priced Little Souls doll sells for $80.00 at wholesale. After markup, the lowest priced Les Petits and Little Souls dolls retail for $110.00 and $160.00 respectively. Because these dolls are sold at such a high price, a consumer can be expected to exercise heightened care and caution before purchasing either plaintiff's or defendants' dolls. *See Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 489 (1st Cir.1981); 3 R. Callman, *The Law of Unfair Competition, Trademarks and Monopolies* § 20.10 at 60 (4th ed.1983). "Courts have found less likelihood of confusion where goods are expensive and purchased after careful consideration." *Pignons S.A. de Mecanique de Precision*, 657 F.2d at 489. Based on the interrelated factors of channels of trade, parties' advertising, and prospective purchasers in this case, I find little likelihood of confusion.

(6) *Evidence of Actual Confusion*

Plaintiffs did not introduce any survey showing actual confusion in the marketplace as to the origin of the respective dolls. While some buyers at an August, 1991 New York Gift Show advised Little Souls salespeople that there was another booth offering dolls which looked like theirs, there was no showing by plaintiff that buyers at that show confused the Les Petits trademark with the Little Souls trademark. Nor did plaintiff prove that

certain sculptural features of the Little Souls dolls had acquired a secondary meaning in the minds of consumers, and that buyers confused the origins of the Les Petits and Little Souls dolls based on such secondary meaning. Thus, I find plaintiff presented no substantial evidence of actual confusion among buyers as to the origin of the Les Petits dolls.

### (7) *Defendants' Intent in Adopting their Mark*

There is no evidence in the record indicating that defendants intended to copy plaintiff's "Little Souls" mark, and the dissimilarity of the two marks negates such intent. Mrs. Gray testified at trial that she started her Les Petits company in late 1990 as an outlet for her watercolors for children, and only later determined to add dolls to her business. In my October 31 order I found that "Mrs. Gray did not, in fact, intend to copy the look and feel of the Little Souls dolls even though she intentionally copied the construction techniques and materials of the Little Souls dolls." Findings of Fact, 6. I similarly find that Mrs. Gray did not intend to copy the Little Souls mark in adopting her Les Petits mark for her dolls.

### (8) *The Strength of the Little Souls Mark*

Plaintiff's mark is a relatively strong mark in that "[t]he Little Souls line of dolls is well-known in the marketplace, at least nationally." Findings of Fact, 1. This "reduces but does not relieve [plaintiff] of the burden of substantiating its trademark infringement claim by sufficient evidence of a likelihood of confusion." *Pignons S.A. de Mecanique*, 657 F.2d at 492 (citing *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 492 (9th Cir. 1980)). Taking all eight of the above factors into consideration, I hold that Little Souls failed to carry that burden at trial.

Accordingly, after reviewing the evidence adduced at trial, I find for defendants on all counts of plaintiff's complaint. All parties shall pay their own costs and attorney's fees. Judgment of dismissal shall enter forthwith.