**Steven D. LAINER d/b/a The Lainer Group, Plaintiff,**

v.

**BANDWAGON, INC., Defendant.**

**No. CIV. A. 97–11080–PBS.**

United States District Court, D. Massachusetts.

Dec. 1, 1997.

Steven N. Fox, Fox & Associates, P.C., Canton, MA, for Plaintiff. ·

William E. Hilton, Maurice E. Gauthier, Sibley P. Reppert, Samuels, Gauthier & Stevens, Boston, MA, Sibley P. Reppert, Samuels, Gauthier, Stevens & Reppert, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER ON MOTION FOR PRELIMINARY INJUNCTION

SARIS, District Judge.

### INTRODUCTION

Plaintiff seeks trade dress protection for the product configuration of a back scratcher. Plaintiff Steven Lainer markets and sells a portable back scratcher with a telescoping handle through his business, The Lainer Group. Defendant Bandwagon, Inc. ("Bandwagon") is prepared to begin selling a virtually identical telescoping back scratcher at a lower price in the same market. In a Complaint filed in state court, Lainer asserted a violation of the Lanham Act, 15 U.S.C. § 1125(a), and several state claims against Bandwagon. After Bandwagon removed the case here, Lainer moved for a preliminary injunction under the Lanham Act. Lainer maintains that his unpatented product design merits federal trademark protection and asks the Court to enjoin Bandwagon's planned distribution of its device. After hearing, that motion is **DENIED.**

### FINDINGS OF FACT

Pursuant to Fed.R.Civ.P. 52(a), the Court makes the following findings of fact, which "do not bind the Court in subsequent proceedings." *TEC Eng'g Corp. v. Budget Molders Supply, Inc.,* 82 F.3d 542, 545 (1st Cir.1996). These findings are based on the affidavits of Steven Lainer and Tim Ho, the Vice President of Bandwagon, and on the Court's observation of the two back scratchers which are the subject of this litigation.

A. *The Parties*

Steven Lainer of Massachusetts operates a small business under the name "The Lainer Group". Lainer has been marketing and selling a product called a "Telescoping Portable Back Scratcher" (the "Lainer Scratcher") since at least March 1996. Lainer sells the product to several mail-order catalogs, which resell it to their subscribers. Three of these catalogs are Starcrest of California, The Paragon and the Vermont Country Store. As of July 1997, more than 61,000 Lainer Scratchers had been sold through catalogs. Lainer's

business does not derive any income from sales of other products.

Bandwagon is a Massachusetts corporation engaged in the business of selling a number of household and personal products and knick-knacks. By way of example, Bandwagon's goods, advertised in its 32–page 1997 wholesale catalog, include a "Monkey Banana Stand", "Inflatable Foot Pillows", a "Toothbrush Timer" and a cardboard "Corrugated Fireplace". (Lainer Aff. Exh. J.) Bandwagon has "developed" a "Pocket Back Scratcher" (the "Bandwagon Scratcher") and plans to sell it at a "substantially lower cost" through mail-order catalogs, several of which are already utilized by the plaintiff to sell the Lainer Scratcher. (Lainer Aff. ¶¶ 9–11.) However, as of July 1997, Bandwagon had not contracted with any of the three catalogs specifically listed by Lainer. (Ho Aff. ¶ 17.) Representatives from Bandwagon had seen the Lainer Scratcher before the design of the Bandwagon Scratcher was finalized. (Lainer Aff. Exh. G.)

### B. *The Lainer Scratcher*

The Lainer Scratcher (See Attachment A) is instantly recognizable, for lack of a better term, as a back scratcher. More descriptively, the Lainer Scratcher resembles a telescoping television antenna with a small, four-pronged bent lobster fork attached to its narrow end. It is coated with nickel plating (Lainer Aff. ¶ 3) and is smooth in texture and somewhat shiny in appearance.

With the antenna/handle contracted, the Lainer Scratcher is slightly more than six inches long and mimics a silver-colored pen (with, of course, the fork in place of the stylus); in fact, the instrument has a pen-like clip designed to secure it to the pocket of a men's dress-shirt and to disguise it as such.[1] In the contracted position, all of the hidden handle segments are slightly visible on the fork end, i.e., it is obvious that the handle is designed to expand. With the handle extended, the Lainer Scratcher is approximately 26 inches long. Its handle consists of six telescoping segments, one-quarter inch in di-

ameter at the pen-clip end and one-eighth inch in diameter just below the attached fork.

The "fork" of the Lainer Scratcher, as mentioned, has four tines. The total width of the head is about a half inch. Each prong is approximately one-quarter inch long, oriented perpendicularly to the handle but slightly bending where the prongs join the body of the fork as it begins a rapid 90 degree curve. The body of the fork extends longitudinally one-half inch before narrowing into a round half-inch sheath which fits securely over the narrow end of the telescoping handle. The entire fork apparatus is non-adjustable and is permanently attached to the narrow end of the handle.

The Lainer Scratcher is listed as the "Telescoping Back Scratcher" (selling for $11.95) in the Vermont Country Store Catalog. (Ho Aff. Exh. A.) The catalog entry does not mention Lainer as the source of the scratcher. In fact, the only indicator of source seems to refer to the Vermont Country Store, not Lainer: the advertising tag line reads "When You Itch, Scratch Fast With Our Telescoping Back Scratcher." (*Id.*) One who orders the Lainer Scratcher from the Vermont Country Store catalog receives it "in a clear polyethylene bag without a label or writing on the bag, and without descriptive terminology or use instructions." (Ho Aff. ¶ 3.)

### C. *Comparing the Bandwagon Scratcher*

The silver-colored Bandwagon Scratcher appears at first glance merely to be a larger version of the Lainer Scratcher. The dimensions and appearance of the handle, in both the contracted and extended positions, are virtually the same as those of the Lainer Scratcher. However, the fork of the Bandwagon Scratcher is roughly double the size of its counterpart. The width of the fork on the Bandwagon Scratcher is one and one-eighths inches and the prongs are each nearly a half-inch long. The fork as a whole extends one and one-half inches longitudinally and three-quarters of an inch latitudinally. The added

---

1. In a seeming attempt to woo potential female buyers, the listing for the Lainer Scratcher in the Vermont Country Store catalog maintains that

the device also appears as a pen when "tucked in your purse." (Ho Aff. Exh. A.)

length of the fork extends the total contracted length of the Bandwagon Scratcher to nearly seven inches.[2]

There are some minor differences, beyond size, between the two back scratchers. Perhaps the most obvious is that the Bandwagon Scratcher has six prongs, rather than four. The prongs of the Bandwagon Scratcher are entirely straight, not extending to the band in the body of the fork. The bend itself it somewhat more obtuse than 90 degrees. The fork's body is decorated, front and back, with a simple "ornamental leaf inscriptio[n]" on either side of the sheathed handle. (Ho Aff. ¶ 7.) The pen-clip end of the Bandwagon Scratcher is plain in appearance, while that of the Lainer Scratcher is decorated with four small dimples in a shallow and narrow groove that circumscribes the wide end of the handle. The Bandwagon Scratcher, plated in chrome (Ho Aff. ¶ 10), feels a bit looser in the joints as it deploys, while the Lainer Scratcher, which may be slightly heavier, is tight and more rigid when extended.

It is important to realize that the minute differences listed above do not change the fact that the two instruments both look like portable silver-colored back scratchers and appear to be almost identical.

## CONCLUSIONS OF LAW

■ Though Lainer's complaint states several claims,[3] his Motion for Preliminary Injunction relies solely on the Lanham Act, 15 U.S.C. § 1125(a). The protections of the Lanham Act apply with equal force to trademark [4] infringement and trade dress infringement, which is alleged in this case. *See Two Pesos, Inc. v. Taco Cabana, Inc.,*

505 U.S. 763, 770, 112 S.Ct. 2753, 2758, 120 L.Ed.2d 615 (1992). "Trade dress has been defined as 'the design and appearance of [a] product together with the elements making up the overall image that serves to identify the product presented to the customer.'" *Chrysler Corp. v. Silva,* 118 F.3d 56, 58 (1st Cir.1997) (quoting *Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.,* 111 F.3d 993, 999 (2d Cir.1997)). In other words, though trade dress historically was associated with the ways in which a manufacturer "dressed up" its product for marketing and sale, trade dress today is also understood to encompass actual product configuration, including elements such as its features, shape, size and color. See J. Thomas McCarthy, 1 *McCarthy on Trademarks and Unfair Competition* § 8.4 (4th ed. 1996) ("McCarthy"). Lainer seeks to protect the product configuration of the Lainer Scratcher.

### A. Legal Standard

■ In order to be successful in a motion for a preliminary injunction in a Lanham Act trade dress case, the moving party must establish that "(1) it has a substantial likelihood of success on the merits, (2) there exists, absent ·the injunction, a significant risk of irreparable harm, (3) the balance of hardships tilts in its favor, and (4) granting the injunction will not negatively affect the public interest." *TEC Eng'g Corp.,* 82 F.3d at 544. Lainer has the burden of making each of these showings. *See International Ass'n of Machinists and Aerospace Workers v. Eastern Air Lines, Inc.,* 826 F.2d 1141, 1144–45 (1st Cir.1987) (citing *Planned Parenthood League of Mass. v. Bellotti,* 641 F.2d 1006,

---

**2.** Due to its greater length in the contracted position, the Bandwagon Scratcher does not conveniently clip to the pocket of a standard men's dress shirt as seemingly designed but rather falls freely across the width of the pocket.

**3.** In addition to trade dress infringement, the Complaint asserts (1) violations of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A (1997), and (2) tortious interference with advantageous business relations.

**4.** Section 43(a) of the Lanham Act, which applies to unregistered trademarks, provides:
"(1) Any person who, on or in connection with any goods or services, or any container for

goods, uses in trade or commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, ·..
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. 1125(a) (1996).

1009 (1st Cir.1981)). "In a trademark case, the key issue is the likelihood of success on the merits because the other decisions will likely flow from that ruling." *Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215, 220 (1st Cir.1989).

In considering Lainer's likelihood of success on the merits, it is important to remember that not all trade dress is protected from copying. "On the one hand ..., trademark law allows a producer to prohibit the copying of a product feature which serves as a signifier of source in order to preserve his reputation and the goodwill consumers have for his brand. On the other hand, effective competition and the penumbra of the patent laws require that competitors be able to slavishly copy the design of a successful product." *Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654, 658 (7th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 1044, 134 L.Ed.2d 191 (1996). "Copying is not only good, it is a federal right—a necessary complement to the patent system's grant of limited monopolies." *Id.* at 657.

In service of these competing concerns, the First Circuit requires that, to establish a substantial likelihood of success on the merits of a trade dress infringement claim, Lainer must prove "(1) that its design is inherently distinctive or has acquired a secondary meaning, and (2) that there is a likelihood that prospective purchasers of [back scratchers] will be confused as to the source of the [Bandwagon Scratcher]. Whether a violation ultimately exists will also depend on the functionality of the copied design." *TEC Eng'g Corp.*, 82 F.3d at 545–46 (citing *Two Pesos,* 505 U.S. at 769, 112 S.Ct. at 2757–58 (internal citations omitted)). "[F]unctional features which are not the subject of a valid patent or copyright may be imitated with impunity." *Fisher Stoves, Inc. v. All Nighter Stove Works,* 626 F.2d 193, 195 (1st Cir.1980). The First Circuit has not determined which party bears the burden of proof on nonfuctionality. *TEC Engineering Corp.*, 82 F.3d at 546 n. 3.

### B. *Inherent Distinctiveness*

The Court must scratch but one itch in this case. The Lanham Act only protects trade dress or trademarks that are distinctive, a characteristic that may be shown in one of two ways. *Two Pesos,* 505 U.S. at 769, 112 S.Ct. at 2757–58. First, trade dress may be "inherently" distinctive. *Id.* Trademarks and trade dress are deemed inherently distinctive when "their intrinsic nature serves to identify a particular source of a product." *Id.* at 768, 112 S.Ct. at 2757 (finding that the overall motif of a Mexican fast-food restaurant may be protected as inherently distinctive trade dress). Trade dress that "carries no distinctive message of origin to the consumer" does not meet this standard. *Wiley v. American Greetings Corp.,* 762 F.2d 139, 142 (1st Cir.1985) (deciding that a red heart on a teddy bear was not inherently distinctive). Stated another way, trade dress features are considered inherently distinctive if "their intrinsic nature is such as to 'almost automatically tell a customer that they refer to a brand.'" *Vornado Air Circulation Sys., Inc. v. Duracraft Corp.,* 58 F.3d 1498, 1502 (10th Cir.1995) (quoting *Qualitex Co. v. Jacobson Prods. Co., Inc.,* 514 U.S. 159, 162–63, 115 S.Ct. 1300, 1303, 131 L.Ed.2d 248 (1995)), *cert. denied,* — U.S. ——, 116 S.Ct. 753, 133 L.Ed.2d 700 (1996). This type of distinctiveness, as the word suggests, "inheres" in the trade dress itself. See *Krueger Int'l, Inc. v. Nightingale Inc.,* 915 F.Supp. 595, 602 (S.D.N.Y.1996).

Second, trade dress that is not inherently distinctive may still satisfy the first element of a Lanham Act claim if the trade dress has "acquired" distinctiveness. "Acquired distinctiveness" is also referred to as "secondary meaning". See *Two Pesos,* 505 U.S. at 769, 112 S.Ct. at 2757–58. Trade dress may acquire distinctiveness in a variety of ways, including, for example, consumer association of the trade dress with a source over time. See *Boston Beer Co. Ltd. Partnership v. Slesar Bros. Brewing Co., Inc.,* 9 F.3d 175, 180 (1st Cir.1993). "[P]roof of secondary meaning is not required ... where the trade dress at issue is inherently distinctive," *Two Pesos,* 505 U.S. at 776, 112 S.Ct. at 2761, because the first element of its Lanham Act claim is already met. Importantly, Lainer does not argue that the Lainer Scratcher has achieved a secondary meaning

and chooses instead to stand or fall on the argument that his product is inherently distinctive. (Pl. Mem. at 7–9.)

### 1. *Inherent Distinctiveness in Product Configuration Cases*

■ The 21–year-old test applied generally to determine inherent distinctiveness in a Lanham Act case is familiar to the courts. Though originally developed for trademarks, the Supreme Court in *Two Pesos* endorsed the following categorical inquiry for trade dress as well, because "[t]here is no persuasive reason to apply different analysis to the two." *Two Pesos,* 505 U.S. at 773, 112 S.Ct. at 2760. Trade dress, "following the classic formulation set out by Judge Friendly, ... may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." *Two Pesos,* 505 U.S. at 768, 112 S.Ct. at 2757 (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976)).

■ The category into which trade dress or a trademark is placed under the so-called *Abercrombie* classifications determines its distinctiveness for purposes of the Lanham Act. Marks or dress that are suggestive, arbitrary or fanciful, "because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection" without a further showing. *Two Pesos,* 505 U.S. at 768, 112 S.Ct. at 2757. "In contrast, generic marks—those that refer to the genus of which the particular product is a species" are disqualified from protection under the Lanham Act. *Id.* (internal quotations and alteration omitted). Descriptive marks or dress hold down the middle ground. Such marks are not inherently distinctive, but rather can only meet the distinctiveness requirement if they have "acquired secondary meaning' by which consumers associate it with a particular product or source." *Boston Beer,* 9 F.3d at 180 (evaluating the distinctiveness of the trademark of a beer) (citing *Two Pesos,* 505 U.S. at 768–69, 112 S.Ct. at 2757–58).[5]

Unfortunately, considerable dissention has developed in the courts over the applicability

of *Abercrombie* to cases, like this one, involving claims of trade dress protection in "product configuration". Two circuits have expressly rejected the categorical *Abercrombie* inquiry in this type of case, and the uncertainty of the law on this point requires discussion. The Third Circuit was the first to depart from *Abercrombie* when, in 1994, it decided that the "trademark taxonomy, carefully and precisely crafted through a long succession of cases to accommodate the particularities of trademarks, does not fit the quite different considerations applicable to product configurations." *Duraco Prods., Inc. v. Joy Plastic Enters., Ltd.,* 40 F.3d 1431, 1441 (3d Cir.1994) (addressing designs of plastic Grecian urn planters). "Product configuration" refers "to trade dress alleged in the product itself, whether in a specific feature or in some combination or arrangement of features," and the term is designed "to distinguish that type of trade dress from 'product packaging.'" *Id.* at 1439. The Court of Appeals acknowledged that the Supreme Court had expressly extended application of the *Abercrombie* test to trade dress cases, but it decided that the holding of Two Pesos was limited to trade dress consisting of product *packaging,* not product *configuration,* because a restaurant's decor was more akin to the former. *See id.* at 1442 (citing *Two Pesos,* 505 U.S. at 767 n. 6, 112 S.Ct. at 2757 n. 6). Having rejected *Abercrombie* in the product configuration context, the Third Circuit drew on the law of unfair competition to develop a new three-pronged test for product configuration cases. For the product configuration of the Lainer Scratcher to be inherently distinctive under the Duraco test, the product feature or combination of features would have to be "(i) unusual and memorable; (ii) conceptually separable from the product; and (iii) likely to serve primarily as a designator of origin of the product." *Id.* at 1449.

The Second Circuit, joining the fray the next year, agreed that the distinctiveness of product configuration should be analyzed differently than the rest of trademark and trade

---

**5.** *Boston* Beer is the only First Circuit case since *Two Pesos* was handed down in 1992 to base its holding on inherent distinctiveness and, there- fore, to have occasion to apply the *Abercrombie* categories. The case concerned protection of a trademark, not trade dress.

dress law. *See Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1007 (2d Cir.1995) (considering squirrel and leaf artwork designs on a children's sweater not to be inherently distinctive because the designs were primarily aesthetic and "not primarily intended as source identification"). In *Knitwaves*, the court agreed that *Abercrombie* did not apply to product configuration cases because the categorical test "make[s] little sense when applied to product features." *Id.* The Second Circuit, however, rather than adopting the Third Circuit's "wholly-new, multi-pronged test", instead "simply asked whether the design was likely to be understood as an indicator of the product's source." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 378 (2d Cir. 1997) (dealing with configuration of outdoor furniture) (citing *Knitwaves*, 71 F.3d at 1008). Additionally, *Knitwaves* requires that the design of a product must have been "primarily *intended* as source identification." *Knitwaves*, 71 F.3d at 1009 (emphasis added); *see Herbko Int'l, Inc. v. Gemmy Indus. Corp.*, 916 F.Supp. 322, 328 (S.D.N.Y.1996) ("determining the producer's intent" to design the product as a source identifier because "it is no longer enough" to demonstrate merely that the trade dress serves to identify the producer). The Knitwaves test has been expressly limited to product configuration cases. See *Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1000–01 (2d Cir.1997) (considering product packaging of a toy bank).

The Eighth Circuit has led the charge in explicitly rejecting deviations from *Abercrombie* in product configuration cases, and it continues to apply the test to all Lanham Act cases. *Stuart Hall Co., Inc. v. Ampad Corp.*, 51 F.3d 780, 787–88 (8th Cir.1995) (considering product configuration of personal project planner and notebook); *see also Insty*Bit, Inc. v. Poly–Tech Indus., Inc.*, 95 F.3d 663, 672–73 (8th Cir.1996) (considering trade dress of "quick-change drill chucks and related accessories"), *cert. denied*, —— U.S. ——, 117 S.Ct. 1085, 137 L.Ed.2d 219 (1997). The Eighth Circuit's view is that departures from *Abercrombie* for product configuration plaintiffs would foreclose the possibility that "product configuration, like packaging, can

be inherently distinctive," *Stuart Hall*, 51 F.3d at 788, because all plaintiffs seeking Lanham Act protection for product configuration would have to make additional showings. Requiring showings beyond that which is "inherent" essentially blurs the two ways in which trade dress may be distinctive, because such a requirement "applies not to whether a trade dress is *inherently* distinctive, but to whether it has a secondary meaning." *Id.* at 787 (emphasis added). That, according to *Stuart Hall*, would be contrary to the clear holding of *Two Pesos* that a trade dress plaintiff who shows inherent distinctiveness does not need to show secondary meaning. *See Stuart Hall*, 51 F.3d at 788; *see also Two Pesos*, 505 U.S. at 769, 112 S.Ct. at 2757–58.

Other circuits have mentioned the departures from *Abercrombie* in product configuration cases but have thus far avoided reaching "this controversial question". *Sunbeam Prods., Inc. v. West Bend Co.*, 123 F.3d 246, 253 (5th Cir.1997) (avoiding the issue of inherent distinctiveness by finding that the product configuration of a stand mixer had acquired secondary meaning); *see also Thomas & Betts*, 65 F.3d at 658 n. 3 (7th Cir.1995) (summarily agreeing that oval-shaped cable ties were not inherently distinctive and could only merit Lanham Act protection if they acquired secondary meaning).

The First Circuit, for its part, has not adopted the tests in the Duraco and Knitwaves lines, although it has cited these cases for other propositions. *See Chrysler Corp.*, 118 F.3d at 58; *TEC Eng'g*, 82 F.3d at 545; *CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1515 (1st Cir.1996); *see also Kasco Corp. v. General Servs., Inc.*, 905 F.Supp. 29, 34 (D.Mass.1995). Furthermore, the few product configuration cases that have recently come before the First Circuit have been disposed of on grounds other than inherent distinctiveness. *See Chrysler Corp.*, 118 F.3d at 58–59 (presuming inherent distinctiveness and disposing of trade dress claim relating to a sports car on grounds of likelihood of confusion); *TEC Eng'g Corp.*, 82 F.3d at 545 (remanding case about trade dress of industrial conveyors for explicit findings of fact). The Court is also

unaware of a case in this District which relies on the grounds of inherent distinctiveness in deciding a trade dress claim involving product configuration. *Cf. TEC Eng'g Corp. v. Budget Molders Supply, Inc.*, 927 F.Supp. 528, 533–34 (D.Mass.1996) (on remand) (deciding based on secondary meaning); *Duracraft Corp. v. Honeywell, Inc.*, 881 F.Supp. 685, 687–88 (D.Mass.1994) (disposing trade dress claim referring to an air cleaner on grounds of functionality and likelihood of confusion).

### 2. *The Test To Be Applied in This Case*

Faced with "new" tests from neighboring circuits and a dearth of First Circuit case law on the subject, this Court declines to depart from the *Abercrombie* test for inherent distinctiveness for essentially the reason given by the Eighth Circuit in *Stuart Hall*, that is, that departure from *Abercrombie* is not authorized by *Two Pesos*. *See Stuart Hall*, 51 F.3d at 787–88; *see also Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F.Supp. 1513, 1556 n. 39 (S.D.Tex.1996) (deciding to apply *Abercrombie* test to product configuration based on *Two Pesos* and a lack of Fifth Circuit authority to depart from it) .[6]

Creation of subsets of "trade dress" is likely at odds with *Two Pesos*. The Supreme Court expressly included "features of product design" as an aspect of trade dress in its discussion of the scope of the Lanham Act. *See Two Pesos*, 505 U.S. at 772, 112 S.Ct. at 2759; *see also Chrysler Corp.*, 118 F.3d at 58 (including product design in definition of trade dress). Having made the definition of trade dress expansive enough to include product design, the Supreme Court then held that the lower court "was quite right . . . to follow the *Abercrombie* classifications consistently and to inquire whether trade dress for which protection is claimed under § 43(a) is inherently distinctive." *Two Pesos*, 505 U.S. at 773, 112 S.Ct. at 2760. The Supreme Court never refers to the terms "product

packaging" and "product configuration" in *Two Pesos*, throughout which it relied on "a presumption that 'trade dress' is a single concept that encompasses both" subsets. *Stuart Hall*, 51 F.3d at 787–88. This Court therefore agrees with the Eighth Circuit that *Two Pesos* "applies to trade dress as a whole" and that a distinction between product packaging and product configuration "would run contrary to the holding of *Two Pesos*." *Id*. The Court also tends to agree that "the entire thrust of *Two Pesos* was to unify the standards for trademark and trade dress, not to balkanize this complex field into yet more subcategories." *Krueger Int'l, Inc. v. Nightingale Inc.*, 915 F.Supp. 595, 602 (S.D.N.Y.1996) (citing *Stuart Hall*, 51 F.3d at 788).

The Second and Third Circuits justify their new tests with the fair practical concern that the *Abercrombie* test is too difficult to apply to product configurations. *See Duraco*, 40 F.3d at 1440 (not "helpful or proper"); *Knitwaves*, 71 F.3d at 1007 ("make[s] little sense"); *see also* McCarthy § 8.13. Nevertheless, while it may be difficult to apply the test in certain circumstances, the *Abercrombie* categories have been helpful to trial courts in product configuration cases. *See, e.g., Pebble Beach*, 942 F.Supp. at 1558–59 (finding trade dress of one of eighteen golf holes to be inherently distinctive because of the "arbitrary" placement of a red and white striped lighthouse near the green but finding trade dress of the rest to be merely "descriptive" of a golf hole); *Winning Ways, Inc. v. Holloway Sportswear, Inc.*, 913 F.Supp. 1454, 1464 (D.Kan.1996) (finding trade dress of a jacket to be "descriptive"); *Black & Decker Corp. v. International Sales & Mktg.*, 36 U.S.P.Q.2d (BNA) 1851, 1853 (C.D.Cal. 1995) (referring to the design of plaintiff's "SnakeLight" flashlight as "distinctive and arbitrary"). In any event, "the Supreme Court has not authorized us to abandon *Abercrombie*, no matter how much difficulty

---

**6.** As a practical matter, the choice of tests probably matters less in this case than it might in others because the Lainer Scratcher certainly is not inherently distinctive under either the Duraco or *Knitwaves* tests, both of which raise the bar for a trade dress plaintiff. While Duraco's "multi-pronged" test might seem oddly suited for a four-tined back scratcher, Lainer's claim of inherent distinctiveness certainly would have been skewered by each of the three prongs of Duraco. Additionally, under *Knitwaves*, the Court would have found that the Lainer Scratcher's trade dress was unlikely to be understood as an indicator of the product's source.

it causes." *Krueger Int'l*, 915 F.Supp. at 602 (citing *Stuart Hall*, 51 F.3d at 788).

### 3. *Application of the Abercrombie categories*

Having decided that the *Abercrombie* taxonomy is the test of inherent distinctiveness applicable to this motion, the Court proceeds to its rather straightforward application. Lainer concedes that his product's trade dress is neither fanciful nor arbitrary. (Pl. Mem. at 8.) Because Lainer has made no showing of secondary meaning, he must, at a minimum, demonstrate that his trade dress is "suggestive" because a characterization of the trade dress as "descriptive" requires a showing of acquired distinctiveness. *See Two Pesos*, 505 U.S. at 769, 112 S.Ct. at 2757–58. Bandwagon seeks to press the Lainer Scratcher to the other end of the spectrum, arguing that its trade dress is "generic." However, given that a categorization of "descriptive" is also fatal to the motion, the Court focuses on the distinction between "descriptive" and "suggestive".

Descriptive trade dress is that which " 'identifies a characteristic or quality of an article or service' . . . such as its color, odor, function, dimensions, or ingredients." Pebble *Beach*, 942 F.Supp. at 1557 (quoting *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 792 (5th Cir.1983)). In contrast, trade dress "is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods." *Abercrombie*, 537 F.2d at 11.

The trade dress of the Lainer Scratcher seems to boil down to four elements: the shape of the fork, the telescoping handle, the pen clip and the shiny nickel plating. These trade dress features, taken together or separately, are descriptive, at best, of the function of the product. There is no indication that the Lainer Scratcher is anything other than what it is: a shiny back scratcher that contracts for ease of carrying and that may be clipped to one's shirt. Lani-

er contends that the trade dress of the Lanier Scratcher requires one viewing it to use his or her imagination in order to come up with the use. (Lanier Aff. ¶ 3.) However, there is no evidence to indicate that one contemplating the Lanier Scratcher would conclude anything more than that he needed to stretch out its telescoping handle to use it "to scratch any itch." There is certainly nothing baffling about a hand-shaped back scratcher. It is hard to imagine what else would do the job. The delivery of the product in a clear bag with no directions or indication of source gives further proof that the trade dress, that is, the total appearance of the product, does not do anything other than describe the product's function.

Because the trade dress of the Lanier Scratcher merely "describe[s] a product, . . . [it] do[es] not inherently identify a particular source, and hence cannot be protected." *Two Pesos*, 505 U.S. at 769, 112 S.Ct. at 2757; see *Pebble Beach*, 942 F. Supp. at 1558 (employing similar analysis to debunk plaintiff's contention that one needed to use imagination to "understand the trade dress" of an allegedly infringing golf hole). The court could no more protect a dinner fork from copying. The Lanier Scratcher is not one of those product configurations that merits a free pass from the requirement of showing secondary meaning; rather, the Court concludes without hesitation that Lanier has not demonstrated a likelihood of proving that the Lanier Scratcher is inherently distinctive and, since no showing of secondary meaning has been made, it is unlikely that he will succeed on the merits. Trade dress that is non-distinctive and functional is ineligible for the protection of the Lanham Act, and it is therefore unnecessary to decide the remaining prongs of the preliminary injunction standard.

### ORDER

Plaintiff's Motion for a preliminary Injunction (Dkt. #7) is **DENIED.**

ATTACHMENT A

THE BANDWAGON SCRATCHER (Left)

and the LAINER SCRATCHER

